# CHARLESTON.

## PETERS *v.* JOHNSON, JACKSON & CO.

Submitted September 11, 1901.   Decided March 1, 1902.

1. FINDING OF JURY.—*Verdict.*
   A verdict in an action of trespass on the case reading, "We the jury find for the defendants," the plea being not guilty, is good.   (p. 645).

2. ACTION IN DAMAGES.—*Oath of Jury.*
   Though in an action sounding in damages there is an order at rules for an entry of damages, yet a plea of the general issue, or other issuable plea, filed in term annuls that order, and the jury is properly sworn to try the issue, and not to inquire of damages.   (p. 646).

3. DAMAGES.—*Rules Governing Juries in Amounts.*
   The general rule is that damages for which a party is liable in tort are such, and only such, as are the reasonable and probable consequence of his acts.   (p. 646).

4. CONTRACT.—*Breach of—Parties to Suit.*
   Only the parties to a contract can sue for damage from its breach; but where in executing it things of imminently dangerous character are used, from which injury may probably happen to others, the law places him who executes the contract under duty to so perform it as not injure strangers to it, and such strangers may sue for damage coming to them from its negligent performance.   (p. 647).

5. DRUGGISTS.—*Care to be used with Poisons.*
   Apothecaries, druggists and all persons engaged in manufac-

turing, compounding, or selling drugs, poisons or medicines, are required to be extraordinarily skillful, and to use the highest degree of care known to practical men to prevent injury from the use of such articles and compounds. (pp. 647, 648).

6. MERCHANTS SALE OF DRUGS.—*Mistake—Liability.*

Where a merchant sells a harmful poisonous drug to one person for a medicine which is harmless by mistake, and it is taken for medicine, without negligence, by a third person, the seller is liable to such third person for damage resulting to him therefrom, notwithstanding there is no privity of contract between the merchant and such third person. (pp. 648, 649).

From Circuit Court Ritchie County. Action by L. J. Peters against Johnson, Jackson & Co. Judgment for defendants. Plaintiff brings error.

*Reversed and Remanded.*

SHERMAN ROBINSON, for plaintiff in error.

P. W. MORRIS, B. F. AYERS and HOMER ADAMS, for defendant in error.

BRANNON, JUDGE:

This is an action of trespass on the case brought in the circuit court of Ritchie County by L. J. Peters against the firm of Johnson, Jackson & Co. The declaration alleges that the defendants sold to the plaintiff through his agent by mistake saltpetre for epsom salts, and that the plaintiff having taken the saltpetre, believing it to be epsom salts, became sick and suffered great impairment of health. The jury in the case found for the defendants.

One error relied upon is that the verdict reads, "We the jury find for the defendants," whereas it ought to read, "we the jury find the defendants not guilty." The argument is that as the plea was "not guilty," the verdict should have responded to the issue. Plainly there can be nothing in this point. The verdict does meet the issue. How could the jury find for the defendants, if they did not find them not guilty? It in effect says they found the issue for the defendants, thus responding to it.

Many verdicts are in this form, and are always regarded as good, just as good as the other form. Verdicts are to be favorably construed, and if the point in issue is substantially decided by the verdict, it is good, and when the meaning of the jury can

be satisfactorily collected from the verdict, upon matters involved in the issue, it ought not to be set aside for irregularity or want of form in its wording. *Lewis* v. *Childers,* 13 W. Va. 1; Hogg, Pl. & Forms, (2 Ed.) 227.

Another objection to the verdict is that the jury was sworn wrong, as the record simply says it was sworn "the truth to speak upon the issue joined," whereas, as there had been an inquiry of damages at rules, the jury ought to have been sworn to well and truly find the amount, if any, which the plaintiff was entitled to recover. How can such a point as this be colorably made when there was in court a plea of not guilty, which annulled the rule order for inquiry of damages?

The declaration avers that the plaintiff sent by an unnamed agent to the store of the defendants for epsom salts, and that they wrongfully and negligently sold to the plaintiff by his agent salt petre, which, being taken, sickened and inflicted lasting injury upon him. The contest in the trial court seems to have been upon the question whether the sale was in fact made to the plaintiff or to McGary. The plaintiff had been sick or indisposed at McGary's house for some three weeks, and wanted salts for medicine, and, as he claims, procured the son of McGary, a boy, to go for him to the store of the defendants for the salts; whereas, the defendants claimed that the plaintiff neither sent the boy, nor bought or paid for them; but that Mrs. McGary being informed that the salts which they usually kept in the house were exhausted, sent the boy herself to the store, and bought them herself. The circuit court seems to have acted, in its instructions, upon the erroneous theory that if the sale was in fact to McGary, not to Peters, Peters could not recover. This theory rests upon the reasoning that there was no sale to Peters, no contract, no relation between the plaintiff and defendants, and therefore there was no duty upon the defendants to the plaintiff, the breach of which could give rise to an action. But the law will not sustain this line of reasoning. Can a druggist, from incompetency or negligence, sell to one person the wrong poisonous article, as medicine, which, being taken, by such person lying sick in the purchaser's house, inflicts injury upon such third person without any liability upon that druggist to answer to that third person? The law says he is liable to that third person. We know that drugs and medicines are kept in homes, and may, probably will, be used by

other persons than the one buying. Such is the probable, usual case. Is it possible that there is no reparation to this third person for irreparable harm to him from such incompetency or negligence? Considering the frightful dangers lurking in drugs, poisons and medicines, this would be a disastrous rule. Is there no duty upon a seller of medicine as to persons who may use them beyond the immediate purchaser, simply because there is no contract between the seller and the third person? Where the action is only for the breach of a contract, only the parties to it, or their privies, can maintain it. Strangers cannot sue for its negligent breach. *Savings Bank* v. *Ward,* 100 U. S. 195; 1 Sherm. & Redfield on Negligence s. 116; 2 Jag. on Torts s. 260. But where in a given transaction the law puts upon a person the duty to so act that he does not harm others, independent of a contract, he is liable to third parties, even though executing a contract made with a particular person, if he harms others by negligence. The question is, has the defendant broken a duty apart from the contract? If he has simply broken his contract, none can sue him but a party to it; but if he violated a duty to others, he is liable to them. The single question in a given case is, was there a duty on the part of the defendant to the person suing him? Whence does duty come? The general rule is that damages only come from what is the natural, reasonable, probable consequence of an act. If harm may come reasonably and probably to any one from another's action, there is duty on him so to act as to avoid such injury. Now, where a druggist sells medicine to one, is it not probable that it may be taken by others than his immediate vendee, and if the wrong article, and dangerous, is it not probable that others will receive injury? If under the facts a common law duty to third persons exists, a party may be sued by such persons for negligence, incapacity or misfeasance in performing his contract with another. This is particularly so in respect to a dangerous thing sold. 2 Jaggard on Torts s. 261; 1 Sherm. & Redf. on Neg. s. 116, note; 57 Am. Dec. 401. "Apothecaries, druggists and all persons engaged in manufacturing, compounding or vending drugs, poisons or medicines, are required to be extraordinarily skillful and to use the highest degree of care known to practical men to prevent injury from the use of such articles and compounds." *Howe* v. *Rose,* 55 Am. St. R. 251, and note; 21 L. R. A. 139; *Walton* v. *Booth,* 34 La. Ann. 913,

where one sold sulphate of zinc for epsom salts and was held to a high standard of liability. Such persons are liable for the slightest negligence and for ignorance and incapacity. They handle things dangerous to human life and health, and must be most alert to avoid mistakes, and they are bound to have adequate skill. 2 Sherm. & Redf. on Neg. ss. 689, 690. In Kentucky the rule is that a druggist must know what he sells, and if he departs from the prescription, or ignorantly sell wrong and poisonous or hurtful drugs, he is an absolute guarantor, and cannot plead that he has been extraordinarily careful in general. *Fleet* v. *Hollenkamp*, 13 B. Mon. 219. This excludes the question of negligence or ignorance as irrelevant, and bases the position on the tremendous and imminent danger to the public from the sale of poisons and medicines. It can hardly be said to lay down too rigid a rule, looking to the safety of life; but the authorities generally do admit the question of negligence as material, but they demand the utmost caution and skill above stated. Certainly this duty is demanded as between the parties to the sale, and upon principles above stated this duty exists between the seller and third persons also. A few cases will show this. The leading case is *Thomas* v. *Winchester*, 6 N. Y. (2 Seld.) 397, 57 Am. Dec. 455, holding that a manufacturing druggist selling a poisonous drug labeled as harmless, is liable to a person who relying on the erroneous label, and without carlessness, takes the drug as medicine, on the ground of breach of public duty, whether the person injured is the immediate customer or not. The druggist, Winchester, sold wholesale to Aspinall, and he to Foord, and Foord sold by retail to Mrs Thomas. Winchester was held liable to her. The court said: "The death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of a false label." The court distinguished between articles of imminently dangerous character, and those not of such character, in saying: "The defendant's negligence put human life in imminent danger. Can it be said that there was no duty on the part of the defendant to avoid the creation of that danger by the exercise of greater caution, or that the exercise of that caution was a duty only to his immediate vendee, whose life was not endangered? The defendant's duty arose out of the nature of his business, and the danger to others incident to its mismanagement. Nothing but mischief like that which actually hap-

pened could have been expected from sending the poison falsely labeled into the market; and the defendant is justly responsible for the probable consequences of his act.  The duty of exercising caution in this respect did not arise out of the defendant's contract of sale to Aspinall.  The wrong done by the defendant was in putting the poison, mislabeled, into the hands of Aspinall, and afterwards used as the extract of dandelion, by some person then unknown.  The owner of a horse and cart who leaves them unattended in the street is liable for any damage which may result from his negligence: *Lynch* v. *Nurdin,* 1 Adolph. & El. (N. S.) 29; *Illidge* v. *Goodwin,* 5 Car. & P. 190. The owner of a loaded gun who puts it into the hands of a child, by whose indiscretion it is discharged, is liable for the damage occasioned by the discharge: *Dixon* v. *Bell,* 5 Mau. & Sel. 198. The defendant's contract of sale to Aspinall does not excuse the wrong done to the plaintiff.  It was a part of the means by which the wrong was effected.  The plaintiff's injury and remedy would have stood on the same principle if the defendant had given the belladonna to Dr. Foord without price, or if he had put it in his shop without his knowledge, under circumstances which would probably have led to its sale on the faith of the label."  That case is recognized as sound law almost without dissent.  It is approved in *Savings Bank* v. *Ward,* 100 U. S. 204, where it is held that "such an act of negligence, being imminently dangerous to the lives of others, the wrongdoer is liable to the injured party whether there be any contract between them or not.  Where the wrongful act is not imminently dangerous to the lives of others, the negligent party, unless he is a public agent, is in general liable only to the party with whom he contracted, and on the ground that negligence is a breach of contract."  This distinction between things imminently dangerous and things not so is drawn in *Thomas* v. *Winchester,* cited, and *Loop* v. *Litchfield,* 1 Am. R. 543.  In *Norton* v. *Sewell,* 106 Mass. 143, 8 Am. R. 298, it was held that if one sell negligently a poison for a harmless medicine to A, who buys it to administer it to B, and gives a dose to B which kills him, an action lies for B's estate.  Gray, J. said: "This finding includes a violation of duty on the part of the defendant and injury resulting to the intestate, for which the defendant was responsible without regard to privity of contract between them. The case is within *Thomas* v. *Winchester,* which has often been

approved by this court." The same in *Davis* v. *Guarnieri*, 45 Ohio St. 470; 4 Am. St. R. p. 561. *Blood Balm Co.* v. *Cooper*, 83 Ga. 457, 20 Am. St. R. 324, approves *Thomas* v. *Winchester*, and holds that one who sells dangerous medicines to a druggist to be resold is liable to third parties as if he himself had sold to them. In *Langridge* v. *Levy*, 2 Mees. & W. 519, 4 *Id.* 337, A bought a defective gun which was warranted, and gave it to B, who was hurt by its explosion; it was held B could sue the seller. The principle was applied to persons contracting to build scaffolds to repair buildings, by holding them liable for defects to workmen using the scaffolds, not employed by such contractor, though there was no privity of contract between them. *Coughtry* v. *Globe Co.*, 56 N. Y. 124, 15 Am. R. 387; *Devlin* v. *Smith*, 89 N. Y. 470; 42 Am. R. 315. So where a mechanic made bad repair to a gas meter which injured a servant in the house. *Parry* v. *Smith*, cited in note in 42 Am. R. 315. The text books lay it down as law. 1 Thompson on Neg. s. 817; Cooley, Torts, 82; Wharton, Neg. s. 91; 2 Jag. s. 261. There are cases sometimes cited in this connection where there is no mistake, but the seller knew the article to be defective or dangerous, and put them on the market, and he was held liable to third parties injured. Where one sold to another a bad ladder, knowing it to be bad, and a third party using it in work was injured, he was allowed to recover against the seller. *Schubert* v. *Clark*, 15 L. R. A. 818, 32 Am. St. R. 565. The knowledge of the seller seemed to govern in that case. There will be found some cases where a seller to one party knows the article is to be used by another. In such case we can base the right on the theory that the third party is the real purchaser, a party to the contract made for his benefit, so that he can sue. *Paducah Co.* v. *Paducah Co.*, 25 Am. St. R. 536. Such is the case of *George* v. *Skivington*, L. R. 5 Excheq. 1, where a husband bought a hair wash for his wife represented to be good for the purpose, and she was allowed to recover. The case is often cited in this connection; but it seems to me to stand on the ground that the seller sold it knowing that it was to be used by the wife, she being a party to the contract, as it was made for her use. The opinions in the case turn it on this knowledge. The seller's representation was also for her use. The seller also knew the character of the article. A number of cases hold the seller liable to strangers to the contract when he knows of defects, but does not

disclose them. They are not opposite in this case. One making bad coal oil knowing its defect was held liable in *Elins* v. *McKean,* 79 Pa. 493. Same principle in *Wellington* v. *Dovener,* 104 Mass. 64. Our case in hand is the case of one selling by mistake the wrong article, by negligence or incompetency, as is claimed, selling a hurtful drug for medicine, when a harmless medicine was called for, and injury resulting to a stranger to the sale. Many authorities hold that one who sells provisions for consumption that are bad and hurtful is liable. *Craft* v. *Parker, Webb & Co.,* 21 L. R. A. 130. Much more in the case of hurtful drugs? Would you limit the liability for selling foul food to only him who made the contract of purchase, and leave others at the table, wife, child, boarder, guest, without remedy against the first author of the harm? If one contracts to prepare a supper for a ball or festival, and furnishes sickening victuals, ought not any one injured go to him for reparation? Under the facts is he not under duty to every one present in addition to his duty to his contracting party? It was held that he was in *Bishop* v. *Weber,* 139 Mass. 411, 52 Am. R. 715. Why not also one selling drugs? We must distinguish cases, and not carry the principle of allowing strangers to the contract to sue for damages in every case. We cannot say that every one injured from defect in a railroad car, or carriage or machinery can sue the maker or seller. This would be saying that any stranger could sue for injury for breach of contract resulting in injury to him. Who would sell under such a rule? The explosion of a defective cylinder of a threshing machine did not give action to a person operating it against the manufacturer, for want of privity of contract. If the manufacturer knew of the defect, he would be liable; but if he did not, it would be otherwise, though guilty of negligence in manufacturing and testing. *Heizer* v. *Kingsland Co.,* 32 Am. St. R. 482; 15 L. R. A. 821. A contracted with the government to furnish a coach for carriage of mail, and B contracted with the government to furnish horses to draw it, and B hired C to drive, and C was injured from a breakdown of the coach. C was denied recovery from A for defect in the coach. *Winterbottom* v. *Wright,* 10 Mees. & Wel. 109. What is the test or criterion always applicable? Hardly any. Each case involving this nice principle must be largely its own arbiter. We say that, as the authorities cited show, a third party, a stranger to the sale, can

only sue when the thing used, or the negligent act, is very dangerous to human life and injury may reasonably be expected to happen to others therefrom.

Contrary to these principles the court instructed the jury that if the sale of the salt petre was in fact made to McGary, the plaintiff could not recover, and therefore instructions of the defendants numbered 1, 4, 5, 6 and 7 are bad. I think defendants' instructions 4 and 12 are bad, because they say that only reasonable or ordinary care was demanded. The greatest care is demanded of one who sells dangerous drugs. So also is high skill, certainly ample skill. If one sells them who is not skilled, but incapable of the business from ignorance or want of experience, he must not sell them. He does so at his peril. He assumes the obligations and risks incident to his chosen business.

Saltpetre and epsom salts not being drugs prohibited from sale, except as allowed in section 9, chapter 150, Code 1899, it is not unlawful for a merchant to sell them, and instructions 2 and 3 were not objectionable. There is no objection to defendant's 8 and 9 as to contributory negligence. My understanding is that instruction 7 of plaintiff was given as it ought to have been. Plaintiff's instruction No. 9, saying that no one but a licensed druggist can sell saltpetre, and that its sale was *prima facie* negligence, was properly rejected. Whether so selling would be ground for treating him as engaged in the business of a druggist without license is one question; but it would raise no presumption, on that ground alone, for the inference of negligence. Of course, it will be understood that whether the defendant in fact did sell the pulverized saltpetre, and whether it was of a highly dangerous character, as also the question of negligence and unskillfulness, will be matters for the jury under the evidence and law on another trial. For these reasons we reverse the judgment, set aside the verdict, grant a new trial and remand the cause to the circuit court.

*Reversed.    Remanded.*