## LAUDEMAN, ADMINISTRATOR, *v.* RUSSELL & CO. ET AL.

[No. 6,758.  Filed May 20, 1910.]

1. NEGLIGENCE.—*Sales of Articles Imminently Dangerous.*—A manufacturer, or vendor, who sells an article imminently dangerous, is required to exercise caution adequate to the peril involved, and is liable for injuries proximately caused by his negligence. p. 35.

2. NEGLIGENCE.— *Sale of Defective Boiler.*— *Notice.*— *Constructive*—*Complaint.*—A complaint alleging that defendants sold to plaintiff a boiler containing a weak seam covered by asbestos, and that they knew, or should have known of such defect, shows constructive notice, and does not show that the defect was concealed. pp. 36, 37.

3. SALES.—*Warranties.*—*Defective Boiler.*—*Negligence.*—A vendor who sells a defective boiler is liable only upon his contract, and not for injuries sustained by an explosion thereof caused by negligent construction. Rabb, J., dissents. pp. 36, 38.

4. NEGLIGENCE.—*Sales of Defective Articles.*—*Notice.*—*Complaint.*—In order to show a liability on the part of a manufacturer, or vendor, of a defective article, it must be alleged that the defendant actually knew of such defect. p. 38.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Action by Edward S. Laudeman, as administrator of the estate of Jesse Leeper, deceased, against Russell & Co. and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Harley A. Logan* and *Deahl & Deahl,* for appellant.

*Davis & Schaefer* and *Anderson, Parker & Crabill,* for *appellees.*

WATSON, J.—After the averment of the death of decedent, and appellant's appointment as administrator of the decedent's estate, it is alleged that defendants, Russell & Co. and the Arbuckle-Ryan Company of Ohio are organized corporations under the laws of Ohio, engaged in the manufacture and sale of portable steam-engines; that the Arbuckle-Ryan Company of Indiana is engaged in the sale, exchange and setting up of boilers and engines manufactured by Russell & Co. and the Arbuckle-Ryan Company of Ohio; that the Arbuckle-Ryan Company of Ohio and the Arbuckle-Ryan Company of Indiana were and are general agents for Russell & Co.; that about the first of the year 1906 the Arbuckle-Ryan Company of Indiana, through orders from the home office at Toledo, Ohio, and in behalf of Russell & Co., reconstructed and set up ready for sale a second-hand traction threshing engine, and caused said engine to be exhibited for sale; that prior to the time of the sale of said engine, defendants Russell & Co. and the Arbuckle-Ryan Company of Ohio caused said engine to be inspected, and gave out and published that it had been tested for boiler resistance, and could be used with safety to life and property; that thereafter they sold this engine to Wesley Delkamp, with knowledge that it was to be used as a threshing engine; that while repairs were being made to said engine, said defendants caused the boiler of the same to be encased in asbestos; that at the time of the sale and at all times thereafter said boiler was not sound and safe, for the reason that a seam had rusted and worn for a distance of eighteen inches in the iron forming the boiler near the bottom thereof, and just back of the fly-wheel, and the boiler, by reason of this rusted seam, was not of sufficient strength to resist the steam pressure required to operate said

engine, even with the aid of the asbestos covering, which condition was known by defendants, or should have been known by them by the exercise of reasonable diligence on their part; that Delkamp purchased said engine as good and sound, relying upon the representations of the agents of said companies; that said engine was sold to him by defendants about March 28, 1906, and was thereafter never injured except through natural wear, tear and rust, which rust at the time of the repair and sale of the engine destroyed the iron as complained of, and rendered the same unsafe and wholly unfit for use, which condition was known, or ought to have been known, by defendants; that said Delkamp was an experienced and cautious thresher, and used said engine for threshing purposes during the season of 1906, until September 17, 1906, on which day, while using said engine to furnish power for threshing, and while operating said engine in the customary manner, with a safe and proper head of steam and sufficient water in the boiler, the boiler, instantaneously and without giving any indication of weakness, exploded at the weak place hereinbefore described, and tore a hole in said boiler, discharging steam with terrific force, and breaking off from said engine and boiler pieces of wood and iron, throwing them with violent force, some of which struck decedent, injuring him so that he died within a few minutes; that said decedent, Jesse M. Leeper, was familiar with threshing engines, their use and proper control, and was a fit and proper person to have charge of such engines; that at the time of the explosion he was assisting in the threshing, and was working in the vicinity of said engine, in the employ of the farmer whose grain was being threshed.

The assignment of errors challenges the sufficiency of the several paragraphs of the complaint. The complaint is based upon the theory that the engine, in the condition it was when repaired and sold by appellees to Wesley Delkamp, was dangerous to life and property.

Are appellees, or any of them, liable to appellant, whose decedent was not privy to the contract made for the sale of the engine?

It has been said that cases which involve the liability of a defendant to those with whom he does not stand in privity of contract may be grouped in three classes: (1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where defendant has been guilty of fraud or deceit in passing off the thing; (3) where the defendant has been negligent only in some respect with reference to the sale or construction of a thing not imminently dangerous.

The principle which underlies the first class of cases—where the article is imminently dangerous—is that the manufacturer, as well as the vendor, owes a duty to all to whom the article may come, and whose lives may be endangered thereby, to exercise caution adequate to the peril involved. To this principle the sale of poisonous drugs under a false label has been applied. *Thomas* v. *Winchester* (1852), 6 N. Y. 397, 57 Am. Dec. 455; *Peters* v. *Johnson, Jackson & Co.* (1902), 50 W. Va. 644, 41 S. E. 190, 88 Am. St. 909, 57 L. R. A. 428; *Bishop* v. *Weber* (1885), 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; *Norton* v. *Sewall* (1870), 106 Mass. 143, 8 Am. Rep. 298; *Dixon* v. *Bell* (1816), 5 M. & S. 198; *Huset* v. *J. I. Case, etc., Mach. Co.* (1903), 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303.

In the last case cited it is said: "The leading case upon this subject is *Thomas* v. *Winchester* [1852], 6 N. Y. 397, 57 Am. Dec. 455. A dealer in drugs sold to a druggist a jar of belladonna, a deadly poison, and labeled it 'Extract of Dandelion.' The druggist filled a prescription of extract of dandelion, prepared by a physician for his patient. The patient took the prescription thus filled, and recovered of the wholesale dealer for the injuries she sustained. In *Norton* v. *Sewall* [1870], 106 Mass. 143, 8 Am. Rep. 298, a recovery was had by a third party for the sale of laudanum as rhu-

barb; in *Bishop* v. *Weber* [1885], 139 Mass. 411, I. N. E. 154, 52 Am. Rep. 715, for the furnishing of poisonous food for wholesome food; in *Peters* v. *Johnson, Jackson & Co.* [1902], 50 W. Va. 644, 41 S. E. 190, 88 Am. St. 909, for the sale of saltpetre for epsom salts; and in *Dixon* v. *Bell* [1816], 5 M. & S. 198, for placing a loaded gun in the hands of a child.''

In each of these cases it is clear that the natural and probable result of the acts of negligence of the manufacturer and vendor would not be inflicted upon the vendee, but extend to and be inflicted upon those who purchased from the vendee and who consumed the poisonous articles, or in any manner sustained injuries resulting from the negligence of the manufacturer and vendor.

Nor does this paragraph come within the second class, for the reason that there is no averment of fraud or deceit. It is averred that the boiler was encased in asbestos, and 2. that it concealed the defect in the boiler, but it does not aver that it was done for the purpose of concealing a known defect, as the only knowledge imputed to appellees, with reference to the defect in the boiler so coverd with asbestos, is constructive knowledge. The averments of the complaint as to this are as follows: ''The boiler at this place was not of sufficient strength and thickness to resist and retain the steam pressure required to operate and drive said engine, and, even with the aid and support of the asbestos covering, offered but little protection and but slight resistance to the steam pressure in the boiler; ₁ * * * which condition was known by defendants, or should have been known by them by the exercise of reasonable diligence on their part.''

It does, however, fall within the third subdivision, which relates to the sale of an article not in itself dangerous, and as to all such articles there is no general or public 3. duty, but the only duty the manufacturer and vendor of a machine owes, flows from the contract, and he is

not, therefore, liable to a third person, and a stranger to the contract, for injuries by reason of negligence in the construction of such article.

In the case of *Daugherty* v. *Herzog* (1896), 145 Ind. 255, 32 L. R. A. 837, 57 Am. St. 204, the court said with reference to the case of *Losee* v. *Clute* (1873), 51 N. Y. 494, 10 Am. Rep. 638: "It was held that the manufacturer and builder of a steam boiler is only liable to the purchaser for defective materials or for any want of care or skill in its construction; and if, after delivery to and acceptance by the purchaser, and while in use by him, an explosion occurs in consequence of such defective construction to the injury of a third person, the latter has no cause of action, on account of such injury, against the manufacturer."

In the case of *Curtin* v. *Somerset* (1891), 140 Pa. St. 70, 21 Atl. 244, 12 L. R. A. 322, it is said: "If a contractor who erects a house, who builds a bridge, or performs any other work; a manufacturer who constructs a boiler, piece of machinery, or a steam-ship, owes a duty to the whole world, that his work or his machine or his steam-ship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned."

The allegation is in the alternative, and, therefore, charges that defendants were only guilty of not exercising due and ordinary care in not discovering the defect in the engine, which defect might have been discovered if such care had been so exercised. At most, this averment charges constructive knowledge only. *Shenk* v. *Stahl* (1905), 35 Ind. App. 493; *Hays* v. *Hays* (1907), 40 Ind. App. 471; *State, ex rel.* v. *Castell* (1887), 110 Ind. 174, 187; *Cincinnati, etc. R. Co.* v. *Smock* (1893), 133 Ind. 411, 413; *Pein* v. *Miznerr* (1908), 170 Ind. 659, 665.

The amended first paragraph of the complaint falls within

the third subdivision, for the further reason that it is not averred that the manufacturer and vendor had actual knowledge of the defect at the time of the repair and sale of the engine, but it is predicated upon the theory of negligence. The paragraph as to this is as follows: ''Which condition plaintiff alleges did exist at the time of the explosion hereinafter described, and which condition was known by defendants, or should have been known by them by the exercise of reasonable diligence on their part, which condition was the same at the time of the sale.'' In order to make a vendor liable, who sells an article not in itself of an imminently dangerous character, it must be averred that he had actual knowledge of the defect or danger. *Huset* v. *J. I. Case, etc., Mach. Co., supra; Heizer* v. *Kingsland, etc., Mfg. Co.* (1892), 110 Mo. 605, 617, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. 482; *Wellington* v. *Downer, etc., Oil Co.* (1870), 104 Mass. 64; *Lewis* v. *Terry* (1896), 111 Cal. 39, 43 Pac. 398, 31 L. R. A. 220, 52 Am. St. 146.

The rule is well established that where the injury is the result of an act, the cause of which is not in itself imminently dangerous to life and limb, nor based upon fraud or deceit, nor implied invitation, and where plaintiff is not privy to the contract with defendant, an action for negligence will not lie. In all cases like this one, where the manufacturer and vendor owed no duty to the third person, who was a stranger to the contract, there could be no recovery. *City of LaFayette* v. *West* (1909), 43 Ind. App. 325; *Dougherty* v. *Herzog, supra; Heizer* v. *Kingsland, etc., Mfg. Co., supra; Huset* v. *J. I. Case, etc., Mach. Co., supra; Zieman* v. *Kieckhefer, etc., Mfg. Co.* (1895), 90 Wis. 497, 63 N. W. 1021; *Woodward* v. *Miller* (1903), 119 Ga. 618, 46 S. E. 847, 64 L. R. A. 932, 100 Am. St. 192 and notes; *King* v. *Creekmore* (1903), 117 Ky. 172, 77 S. W. 689; *Simons* v. *Gregory* (1905), 120 Ky. 116, 85 S. W. 751; *Necker* v. *Harvey* (1883), 49 Mich. 517, 14 N. W. 503.

The view that we have thus taken of the first paragraph of the amended complaint is applicable to the second and third paragraphs. The trial court did not err in sustaining the demurrer to each of these paragraphs.

Judgment affirmed.

Myers, C. J., Comstock, Roby and Hadley, JJ., concur.

## DISSENTING OPINION.

Rabb, J.—Without reference to conflicting decisions of courts of last resort, I think that the fundamental principles governing the law of negligence requires one who is engaged in the manufacture of an article, which if defective will be dangerous to human life, to exercise ordinary care to discover the existence of such defect in the article he manufactures before he puts it on the market and places it where it is liable to injure some one, and that the exercise of this care is a duty which the manufacturer owes to all who come within the danger to be apprehended from the existence of the defect, regardless of whether they do, or do not, sustain contractual relations with the manufacturer.

In this case the article in question is a steam boiler, belonging to a threshing outfit. The defect, alleged in the complaint to have existed in the boiler when appellee put it on the market, was of such character that appellee was bound to know that if it existed his boiler was a thing of danger to those at work about it, when being used for the purpose for which it was manufactured, and with this defect in the boiler, it was liable to explode when in use, and kill and maim an entire threshing crew. In my opinion there is no room, within the reason and logic of the law, to hold that the manufacturer owed no duty to those who would be thus put in jeopardy by such a defective machine to exercise ordinary care to discover the defect before putting out the machine for use, and, such being my view, I think the averment in the complaint, that the condition of the boiler was known,

"or by the exercise of reasonable diligence on part of appellees could have been known by them at the time the boiler was sold," was equivalent to the direct averment that they did know the fact. *Malott* v. *Sample* (1905), 164 Ind. 645; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156; *Heltonville Mfg. Co.* v. *Fields.* (1894), 138 Ind. 58; *Louisville, etc., R. Co.* v. *Miller* (1895), 140 Ind. 685; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Johnson* v. *Gebhauer* (1902), 159 Ind. 271; *Consumers Paper Co.* v. *Eyer* (1903), 160 Ind. 424; *Zeller, McClellan & Co.* v. *Vinardi* (1908), 42 Ind. App. 232.

I think the complaint was sufficient to withstand demurrer.