CARRIE H. BURKETT v. STUDEBAKER BROS. MANUFACTUR-
ING COMPANY.*

*(Knoxville.*   September Term, 1912.)

1. **NEGLIGENCE.  Liability of manufacturer for injuries resulting
   from defects in goods put upon the market, with knowledge,
   and without notice.**

   As a general rule, the manufacturer is not liable for injuries sus-
   tained by the purchaser of his goods from an intermediate
   dealer, for want of privity between the parties, unless the
   manufacturer put apparently safe goods on the market, with
   knowledge of the defect therein, and without notice of the de-
   fect, or unless the goods are of such kind as to be immediately
   dangerous to human life or health, when he becomes liable to
   any one into whose hands the article falls, and who is injured
   while using it properly.  (*Post, pp.* 472, 473.)

   Cases cited and approved: 'Huset v. Case, etc., Co., 120 Fed.,
   865; Knelling v. Manufacturing Co., 183 N. Y., 78; Tomlinson v.
   Armour, 75 N. J. Law, 748; Hasbrouck v. Armour, 139 Wis., 357;
   Statter v. Manufacturing Co., 195 N. Y., 478; Laudeman v.
   Russell, 46 Ind. App., 32; Ward v. Pullman Co., 138 Ky., 554;
   Pullman Co. v. Ward, 143 Ky., 727; Olds Motor Works v. Shaffer,
   145 Ky., 616; Peaslee-Gaulbert Co. v. McMath, 148 Ky., 265.

2. **SAME.  Nonliability of manufacturer of goods for injuries re-
   sulting from defects, where same were purchased through in-
   termediate dealer, without participation by manufacturer; pub-
   lic policy forbids liability.**

---

*The authorities on the question of the liability of a manufac-
turer, packer, or vendor to persons not in privity of contract, for
injury from defects in article sold, are collated in a note in 19 L. R.
A. (N. S.), 923.

As to the liability of a manufacturer or dealer for personal in-
juries caused by defects in automobile, see note in 37 L. R. A.
(N. S.), 560.

Where. the defendant manufacturer of a carriage wrote to the plaintiff's husband, who was negotiating with a certain dealer for the purchase of a carriage, stating he used the best material throughout in the construction of his carriages, and that he trusted plaintiff's husband would give said dealer his order; and where plaintiff's husband subsequently purchased through another dealer a carriage manufactured by such manufacturer, who had no knowledge of the negotiation with the other dealer until the carriage was ordered; and plaintiff was subsequently injured through defects in the carriage, it was *held* that conceding the possible liability of the manufacturer, if. the purchase had been made through the said first mentioned dealer, upon the theory that the manufacturer aided in making the sale, he could not be held so liable where the sale was made through the other dealer, in whose negotiations the manufacturer did not participate. Public forbids such liability of manufacturers. (*Post, pp.* 473, 474.)

## FROM McMINN.

Appeal from the Circuit Court of McMinn County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. JOHN W. STAPLES, Special Circuit Judge.

EUGENE E. IVINS, for plaintiff.

T. POPE SHEPHERD and D. S. STUART, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is an action for damages, brought against the defendant to recover for injuries alleged to have been inflicted upon the person of the plaintiff, resulting from a defect in a carriage made by the defendant, by reason

of which one of the rear wheels gave way, and caused the carriage to partly overturn and throw the plaintiff out in such manner as to inflict serious injury upon her. The trial judge directed a verdict in favor of the defendant. From the judgment rendered thereon the plaintiff appealed to the court of civil appeals, and there the judgment was reversed. The case was then brought to this court by *certiorari* on the part of the defendant.

The undisputed facts disclosed by the record are as follows:

A short time prior to September 30, 1908, the plaintiff and her then husband, Col. T. M. Burkett, were desirous of purchasing a carriage for the use of Mrs. Burkett. They applied to Reed Hardware Company, a business firm in Athens, Tenn., where they resided. That firm wrote to several manufacturers of carriages, among others the defendants. Thereupon, on the 30th of September, the defendant wrote a letter to plaintiff, in which it recommended two of their carriages of the kind known as a "station wagon." This letter, after describing the carriages in detail, stated: "We use the best material throughout in the construction of these carriages, and every attention is given to detail of finish, to make them complete in every respect. We would like very much to have you ride in a Studebaker carriage, and we trust that you will conclude to favor the Reed Hardware Company with your order." Shortly after this an agent of the defendant called upon Burkett and wife, in Athens, and exhibited cuts of the vehicle desired, in the presence of Mr. Sherman, a member of

the firm of Reed Hardware Company, but no purchase was at that time made. A month or two after this Col. Burkett took up the matter with Gillespie-Ford Company, a business concern of Chattanooga. On the 18th of November, this firm wrote Col. Burkett a letter in which they said: "We are inclosing you a cut of the station wagon that speaks for itself. We don't know where or of whom you could get one that would equal it in looks or merit. These people have had the experience, the money, and the material to make the best on the market, and we are very anxious to make this to you, as we know a Studabaker sold means a satisfied customer. We are making you a price for immediate acceptance that barely equals the price of a second-grade outfit. The fact is that, as a man of your wide political experience wells knows, all prices will advance in from thirty to sixty days, and we wish to get this order to the factory before they notify us. Understand us that this is no scheme to push you into anything, for we will as gladly sell you later as now; but, if they advance on us, we will have to do the same with our customers. Hoping that we may be allowed to have the pleasure of your order by return mail, we are," etc. On November 21, Col. Burkett replied, acknowledging the receipt of the letter just mentioned, saying: "We will take the wagon delivered here complete at $500 cash. We don't want anything but the very best made into the style ordered, including all the things set out under cut 1397," etc. On the 23d of the same month Gillespie-Ford Company replied to the foregoing: "We have forwarded your order

to the Studebaker Bros. Mfg. Co. for job that you se-
lected, and as soon as we get word from them will let
you know date of shipment.   This will be a swell turn-
out, and will be favorably commented on wherever seen."
Thereupon Gillespie-Ford Company sent the order to
defendant, with orders to ship the goods direct to Col.
Burkett at Athens.   This was done, and the bill was
charged by defendant to Gillespie-Ford Company.   The
vehicle reached the Burketts in the early days of Janu-
ary, and was presented by Col. Burkett to the plaintiff.
A few days thereafter, the first time it was used, one
of the wheels broke down.   There were only three per-
sons in the conveyance besides the driver; and it was
standing still, except that the horses were moving back-
ward slowly, because crowded in front by another
vehicle.   There was no violent movement at all.   One of
the rear wheels slipped down a slight declivity, a few
inches in length, and all the spokes broke off at the
hub, causing the carriage to overturn, and plaintiff to
be thrown to the ground, and injured.   The testimony
shows that the wood of which these spokes were made
was, as an expert witness says, "brash;" that is brittle,
and hence very inferior as spoke timber.   The declara-
tion, in its several counts, presents the case in two
aspects:   First, as an article purchased from the de-
fendant; second, as an article purchased from a dealer
who had bought from the defendant—the liability being
placed on negligent construction by defendant.

It is perceived from the stated facts that the purchase
was not made from the defendant, but from Gillespie-

Ford Company. There can be no doubt, however, that the letter which defendant wrote to plaintiff on September 30, and the subsequent representations of its agent, had a direct influence upon plaintiff and her husband in inducing them to finally buy the vehicle, although they did not purchase it through Reed Hardware Company, whom the defendant was assisting in its effort to sell the vehicle to the Burketts. It does not appear that defendant knew anything of the negotiations with Gillespie-Ford Company until it received the order from that firm. Likewise it does not appear that defendant had any knowledge of the defect in the wheel which caused it to crush in the manner already stated.

Col. Burkett died before the accident happened.

The general rule is that a manufacturer is not liable to a third person, who buys his goods from an intermediate dealer, because of the want of any privity between the parties. The rule is different, however, if the manufacturer had knowledge of the defect, and put it upon the market in that condition. In such case he is guilty of fraud, and is liable to any one into whose hands the article falls, and who is injured while using it properly. He is also liable to such third person, where the article sold is of such kind as to be imminently dangerous to human life or health; also, when the article, although not apparently dangerous, is known by him to be such, and he gives no notice of its qualities when he puts it upon the market. 29 Cyc., 478-486; *Huset* v. *J. I. Case Threshing Machine Co.,* 120 Fed., 865, 57 C. C. A., 237, 61 L. R. A., 303, and note; *Kuelling* v. *Roderick Lean*

Burkett v. Manufacturing Co.

*Mfg. Co.,* 183 N. Y., 78, 75 N. E., 1098, 2 L. R. A (N. S.), 303, and note, 111 Am. St. Rep., 691, 5 Ann. Cas., 124; *Tomlinson* v. *Armour & Co.,* 75 N. J. Law, 748, 70 Atl., 314, 19 L. R. A. (N. S.), 923, and note; *Hasbrouck* v. *Armour & Co.,* 139 Wis., 357, 121 N. W., 157, 23 L. R. A. · (N. S.), 876; *Statler* v. *George L. Ray Mfg. Co.,* 195 N. Y., 478, 88 N. E., 1063; *Laudeman* v. *Russell & Co.,* 46 Ind. App., 32, 91 N. E., 822; *Ward* v. *Pullman Co.,* 138 Ky., 554, 128 S. W., 606; *Pullman Co.* v. *Ward,* 143 Ky., 727, 137 S. W., 233; *Olds Motor Works* v. *Shaffer,* 145 Ky., 616, 140 S. W., 1047, 37 L. R. A. (N. S.), 560; *Peaslee-Gaulbert Co.* v. *McMath's Adm'r,* 148 Ky., 265, 146 S. W., 770.

Under the principles stated, it is clear the trial judge acted correctly in directing a verdict, unless the plaintiff had a cause of action arising out of the fact that the defendant wrote the letter of September 30, recommending the special make or kind of vehicle as being fashioned from the best materials, and thereby aided in the sale. It is possible that, if the sale had been made by Reed & Co., the defendant would have been properly treated as jointly liable with that firm, on the ground that it aided these persons in making the sale. But Reed & Co. did not make the sale. Their services were rejected, and they were passed over. Negotiations for a carriage were begun, and then concluded, with Gillespie-Ford Company, and the carriage that inflicted the injury was purchased of them. Defendant had nothing to do with that transaction, except to honor the order of Gillespie-Ford Company, and ship the goods at their request

to plaintiff and her husband. In this transaction there was no privity of contract between plaintiff and defendant. The distinction may seem technical between this transaction and the dealing with Reed & Co.; but it is not. It is substantial. It is clear, under the great weight of authority, that the manufacturer, when the article is not imminently dangerous, can be held liable to a third party only when he knew of the defect, and with this knowledge put the article upon the market. Some of the cases cited supra show that the manufacturer's knowledge may be proven by circumstances; but no effort of the kind was made in the present case. In the absence of knowledge of the defect, his liability is only to those with whom he has contractual relations. The main reasons assigned for the rule are that any injury that might occur to a third party could not be within the contemplation of the parties to the contract, and that if suits of the kind were sanctioned against manufacturers there would be no end to litigation, and practically no means, in the great majority of the cases, for the manufacturer to protect himself, and therefore that useful class of producers would be so loaded with litigation that their labor, skill, and enterprise would be greatly discouraged, if not destroyed, to the great detriment of the public welfare. Hence it is said that such suits are against public policy, and not to be entertained.

It follows that the judgment of the court of civil appeals must be reversed, and that of the trial court affirmed.