McCLOUD v. LEAVITT CORPORATION et al.

CATT v. LEAVITT CORPORATION et al.

Civil Actions Nos. 773–D, 792–D.

District Court, E. D. Illinois.

Aug. 9, 1948.

Acton, Acton, Baldwin & Bookwalter, of Danville, Ill., and Fesler, Elam & Fauver, of Indianapolis, Ind., for plaintiffs.

Mann & Stifler, of Danville, Ill., for defendant Leavitt.

Steely, Dysert & Norwood, of Danville, Ill., for defendant Bailey & Hines.

LINDLEY, District Judge.

The complaint alleges that, in the summer of 1946, defendants contracted to manufacture and deliver to Purdue University, a grandstand with 42 rows or tiers of seats, which was to comply with the standard "Underwriter's" specifications for strength and safety; that the grandstand was delivered and installed in November, 1946; that defendants well knew that the grandstand was to be used by students and others, in great numbers during athletic contests and other events and that any defect in construction would be likely to result in injury to those making use of the structure; that defendants were guilty of various acts of negligence and carelessness in the manufacture and construction and installation of the structure; that the grandstand was in such negligent defective condition as to be imminently dangerous to persons using it; that on February 5, 1947, while plaintiff was seated on the grandstand as a spectator at a basketball game, it collapsed, causing permanent injury to plaintiff, all as a proximate result of the negligence of defendants with respect to the various defects enumerated in the complaint, all of which were known, or by the exercise of reasonable care, should have been known to defendants, and that at the time of the injuries complained of, plaintiff was in the exercise of due care for her own safety.

Defendants move to dismiss upon the ground that the complaint fails to show any privity of relationship or contract between plaintiff and defendants out of which arose any duty by defendants to plaintiff as to design, manufacture or construction of the grandstand, thus presenting the narrow question of whether a manufacturer or builder stands in such a relationship to an injured third party user as will give rise to a negligence action based on negligent defects in the manufactured article. The question is old in the law, and at an early date the courts promulgated the so-called "general rule" that a manufacturer is not liable for negligence to remote vendees or other third persons with whom he has had no contractural relations. This doctrine had its source in the famous case of Winterbottom v. Wright, 1842, 10 Mees & W. 109. In that case, defendant had contracted to deliver certain mail coaches, and to keep them in good condition. Defendant negligently failed to keep them repaired, and as a result, plaintiff, a driver of one of the coaches, was injured. In his action against the defendant, a demurrer to the complaint was sustained. One of several opinions in the case based denial of recovery on the fact that there was no privity of contract between the parties. This thought was carried into American cases, and it soon came to be the rule with us that a manufacturer is not liable for negligence to remote vendees or other third persons with whom he has no contractual relations. But exceptions to the rule soon made their appearance. One such was recognized in cases where the article in question is "inherently dangerous."

Much more could be said concerning the history of the rule, the exceptions gradually developed, and its subsequent abandonment by most jurisdictions in this country. But, since the subject is ably discussed in an editorial note appearing in 164 A.L.R. 569, I deem it unnecessary to lengthen unduly this memorandum by a discussion of all of the developments there noted. See also 46 Am.Jurisp. Sales, Sec 812 and 1947 Pocket Supl. Suffice it to say that in 1916, Mr. Justice Cardozo's decision in McPherson v. Buick Motor Co., 217 N. Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440, laid the foundation for the modern approach to the measure

of the manufacturer's liability. In that case, plaintiff was riding in an automobile manufactured by defendant and sold to plaintiff by a retail dealer. Due to a defective wheel, the car suddenly collapsed and plaintiff was injured. Defendant had bought the wheel from another manufacturer, but had omitted to inspect it before placing it upon the car. The court held that the manufacturer was liable for negligence to the remote vendee. Mr. Justice Cardozo, after pointing out certain exceptions to the so-called "general rule" of nonliability in certain cases, as, for example, in the case of falsely labeled poisons, as in Thomas v. Winchester, 6 N.Y. 397, 57 Am.Dec. 455, said [217 N.Y. 382, 111 N.E. 1053]: "We hold, then, that the principle of Thomas v. Winchester is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully." Justice Cardozo took a realistic view of the question. He recognized the weakness of a rule in which "privity of contract" was used as a test for determining liability in a tort action. The only question in such an action should be "was it reasonably forseeable that negligence by the manufacturer would result in the injury complained of?" The fact that most jurisdictions in this country have either expressly repudiated the "general rule," or have made so many exceptions that they have virtually "swallowed up the rule," would seem convincing proof of the soundness of the McPherson case.

Here, the defendants knew that the grandstand would be used for seating spectators at sporting events. Such was to be its normal use, and the use to which it was being put at the time of the accident. It was also reasonably foreseeable that the grandstand would inevitably be dangerous to life and limb, if it were negligently constructed. Under the modern doctrine of liability, stemming from McPherson v. Buick Motor Co., supra, the complaint states a cause of action. However, inasmuch as the parties agree that the case is governed by the law of Indiana, the place where the injury complained of was received, in deciding the motion to dismiss, I must ultimately look to the Indiana cases, and from them determine the rule abiding in that state. My question is, "what is the law of Indiana?"

The first case cited by defendants is Daugherty v. Herzog, 1896, 145 Ind. 255, 44 N.E. 457, 32 L.R.A. 837, 57 Am.St.Rep. 204. There, plaintiff's daughter had been killed by a falling building which had been negligently remodeled by the defendant, a contractor. In sustaining a demurrer to the complaint, the court held that the defendant contractor's duty extended no farther than to the owner of the building. For authority, Winterbottom v. Wright was cited. However, the court recognized the exception to nonliability in cases involving the sale of articles inherently dangerous to life.

In Laudeman v. Russell & Co. et al., 1910, 46 Ind.App. 32, 91 N.E. 822, an employee of the buyer of a steam engine was killed by an explosion of the boiler. In a suit against the manufacturer and seller of the engine, it was alleged that the boiler was defective, and that the defendants knew or by the exercise of reasonable care should have known that the boiler was defective. A demurrer to the complaint was sustained on the ground that the engine was not an inherently dangerous article, and that there was no fraudulent concealment of a defect, and that, since there was no privity of contract between the parties, an action for negligence would not lie.

In Travis, Adm'x, v. Rochester Bridge Co., 1918, 188 Ind. 79, 122 N.E. 1, 2, plaintiff's husband was killed by the falling of a bridge constructed by defendant on a public highway under a contract with the Board of Commissioners of LaPorte County. The bridge had been constructed ac-

cording to plans and specifications submitted by the Board, and had been accepted by the County five years before the accident. Once again, the court sustained a demurrer to the complaint, saying: "Many cases have been cited by appellant involving the liability of manufacturers of machinery, conveyances, and other articles sold in the regular course of trade, for injuries resulting to persons not parties to the contract on account of defects in the construction of the article sold. The relations involved in such cases are analogous to those in the case at bar, but they are not identical; and the rules of law which apply, while similar in many respects, are not the same. In the class of cases to which the one at bar belongs, the work is generally done by the contractor in accordance with plans furnished by the party letting the contract or under his direction and supervision, and the work is subject to inspection before acceptance. In the other class of cases to which reference is made, the machinery or other article manufactured is made according to the plans of the manufacturer and under his direction and subject to his inspection before sale. The differences pointed out between the classes of cases under consideration furnishes a reason for holding that the liability of an independent contractor toward third persons, not parties to the contract, terminates with the completion of the work and the acceptance of the contract, while a similar rule, but somewhat modified, applied to manufacturers selling in the ordinary course of trade. As affecting the liability of a contractor, the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the chain of causation so as to preclude a third party from asserting or relying on any duty on the part of the contractor to use care for his safety in the construction of the work." Although the court stressed the fact that the work had been done in accordance with plans furnished by the County and had been accepted by the County, it went on to state the general rule of Winterbottom v. Wright, and, from the discussion that followed, it seems rather clear that the court at that time was committed to the rule of nonliability of the manufacturer in cases such as the one at bar. There are, however, I think material differences between the averments in that case and those in the present case.

However, plaintiff contends that subsequent cases reflect a change in the Indiana rule. She relies principally on Holland Furnace Co. v. Nauracaj et al., 1938, 105 Ind.App. 574, 14 N.E.2d 339. There the Furnace Company installed a furnace so close to an exposed wooden wall that when a fire was started in the furnace the building caught fire. There was no privity of contract between the furnace company and the landlord plaintiff, as the furnace had been ordered by and installed for the tenant. The Appellate Court sustained a judgment for the plaintiff, and the Indiana Supreme Court denied a transfer. The Court said, 105 Ind.App. pages 580, 581, 586, 14 N.E.2d 339, 342: "It is broadly true that where the charge of negligence is based upon a breach of duty arising out of contractual relations, no cause of action arises in favor of one not in privity to such contract. As well settled and as authoritative as the general rule itself are certain exceptions. * * * If the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor if he knew of the defect and fraudulently concealed it. Travis, Adm'x, v. Rochester Bridge Co., 1919, 188 Ind. 79, 122 N.E. 1; Laudeman v. Russell & Co., 1910, 46 Ind.App. 32, 91 N.E. 822. *There is, however, another recognized exception, viz.: A contractor continues liable where the work is turned over by him in a manner so negligently defective as to be imminently dangerous to third persons.* Moll, Ind. Contractors, § 228, p. 343; § 42, 14 R.C.L., p. 107; 29 Cyc. 484; 16 A. and E. Ency. L. 209; Wharton, Neg., § 438; 1 Thompson, Neg., § 686; Berg v. Otis Elevator Co., [1924] 64 Utah 518, 231 P. 832; Pennsylvania Steel Co. v. Elmore & Hamilton Co., C.C., 1909, 175 F. 176. * * * While it is true that the contract for the installation of the furnace was between appellee Brecka and appellant, and that appellee Nauracaj was not a party

290

thereto and had no contractual relation with appellant, and that the contract was completed and the work accepted by appellee Brecka before the damage occurred, nevertheless, it appears that appellant was by contract required to, and did, install an instrumentality, the use of which, in the ordinary and usual manner *as installed,* was imminently dangerous. Applying the facts here to the principles of law announced in the foregoing authorities, appellant owed a duty, not only to appellee Brecka, but to appellee Nauracaj, as owner of the property, to use care commensurate with the danger to which the agency exposed the person or property of both appellees." (Emphasis added)

■ Plaintiff contends that although the court gave lip service to the earlier Indiana cases it in fact destroyed the old rule by recognizing on exception to nonliability in cases where a contractor's work is turned over by him in a manner so negligently defective as to be imminently dangerous to third persons. There is much to be said for plaintiff's point of view, because though the court held that the furnace, as such, was not imminently dangerous, it also held that *as installed,* it became imminently dangerous, and so within a recognized exception to the general rule of nonliability as to parties not in privity. Having recognized the exception, the court in effect applied the doctrine of liability emanating from Justice Cardozo's decision in the McPherson case. A grandstand, as such, is not imminently dangerous, but if negligently made or negligently installed so as to become dangerous to human life in its contemplated use it certainly becomes imminently dangerous.

Plaintiff also cites the case of Coca Cola Bottling Works of Evansville, Inc. v. Williams, 1941, 111 Ind.App. 502, 37 N.E.2d 702, where the bottler was held liable to a third person not in privity for negligence in putting out a bottle of coca cola containing cement. The bottling company tried to invoke the old Winterbottom rule, and suggested that since the article sold was not inherently dangerous, the plaintiff could not recover because there was no privity of contract between the plaintiff and the defendant. To this, the court replied, 111

Ind.App. Page 512, 37 N.E.2d page 706: "The original rule on this matter has been greatly restricted in the later decisions. See McPherson v. Buick Motor Co. [1916], 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440 (Cardozo, J.); see also 13 Ind.Law Journal 85; Holland Furnace Co. v. Nauracaj, [1938] 105 Ind. App. 574, 14 N.E.2d 339; see also 17 A.L.R. 683, and the numerous citations therein. The rule now in the best-reasoned cases is that the manufacturer of foods or bottled goods sold for human consumption may be held liable to the ultimate consumer for injuries caused by foreign deleterious substances in such goods, regardless of whether or not there was privity of contract between them. (Cases cited)" It is significant that the McPherson case was cited, with apparent approval. Once again, the Indiana Supreme Court denied a transfer.

The court cited in support of its conclusions Penn. Steel Co. v. Elmore and Hamilton, C. C., 175 F. 176, 180, wherein the court discussed the liability of builders of structures to third persons, contemplated users, at considerable length. That court said: "In my judgment it is immaterial that the dangerous thing made and turned over for use by others known to the maker is a structure, such as piers for a bridge, instead of some article of commerce such as naphtha, or a drug, or a chemical compound. This is shown by the decisions in Devlin v. Smith, 89 N.Y. 470, 42 Am.Rep. 311; Coughtry v. Globe Woolen Co., 56 N.Y. 124, 15 Am.Rep. 387, commented on in Devlin v. Smith, supra, pages 478, 479 of 89 N.Y. 42 Am.Rep. 311." It adopted this language of Rapallo, an extremely able exponent of American law: "Any defect or negligence in its construction, which should cause it to give way, would naturally result in these men being precipitated from that great height. A stronger case where misfortune to third persons not parties to the contract would be a natural and necessary consequence of the builder's negligence can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life." It seems perfectly obvious that the court's citation of such language confirms my anal-

ysis of the Indiana law. The same conclusion is justified by the Indiana court's citation of 17 A.L.R. 672, where, in a lengthy comment, at page 701, the editor analyzes the cases holding that if the nature of a thing is reasonably certain to place life or limb in peril when negligently made, it is then a thing of danger to those who it is contemplated will use it, irrespective of privity between such users and defendants. In other words the inquiry is simply whether the injury charged is the natural and probable consequence of the wrong, such a consequence as might or ought to have been foreseen as likely to flow from the wrong.

■ Although these two recent Indiana cases do not expressly repudiate the old rule of nonliability as such, I think a reasonable conclusion to be drawn from the language used and from the fact that the Indiana Supreme Court denied a transfer in both cases, is that Indiana has, in effect, accepted the exceptions enunciated in the McPherson case. If it could be said that these two recent Indiana cases merely place the Indiana law in doubt, then, on the basis of that doubt, it would still seem more appropriate for this court to ascribe to the Indiana law, a doctrine of liability which has been widely accepted as being sound, rather than to attribute to Indiana a doctrine long since repudiated by most jurisdictions.

■ Defendants urge also that they are not liable inasmuch as the grandstand was completed and delivered to the purchaser and accepted by the latter. I think what I have said concerning the present attitude of the Indiana courts upon the question of necessity of privity of contract is decisive also of this contention. As I have said, in a tort action as I think the Indiana courts now look at it, the question is not whether there must be necessarily privity of contract but whether plaintiff has charged negligence which it might reasonably have been foreseen, would naturally and probably result in injuries to third persons. Hence, it is immaterial that the performance was accepted by the contractee.

In this connection defendants rely again upon the Travis case, but even in that case the court intimated that a distinction exists in cases like the present, saying first that where the work is done by the contractor in accord with the plans furnished by the party letting the contract or under his direction or supervision, acceptance of the contract by the purchaser is a bar to actions by third parties. Though I doubt that the Indiana courts, in view of the later decisions, would now so hold, yet even in that case the court recognized that there is a distinction between such cases and "another class of cases to which reference is made" in which "the machinery or other articles of manufacture is made in accordance with the plans of the manufacturer and under his directions" so I doubt even if the Travis case were still the law, with all its connotations, it would bar the plaintiff's action upon this last mentioned contention.

The motion to dismiss is denied. This memorandum shall be filed and this order shall enter in both cases.