SMITH *v.* HOTEL ANTLERS COMPANY, INC.

[No. 18,703.   Filed April 3, 1956.]

*French M. Elrod* and *Ted B. Lewis,* of Indianapolis, for appellant.

*Bredell, Cooper & Martin, Harold H. Bredell* and *C. Wendell Martin,* all of Indianapolis, for appellee.

PFAFF, P. J.—The appellant was the unsuccessful plaintiff in a suit to recover damages to his automobile allegedly placed by the appellant as a guest in the custody of the appellee as an innkeeper.

The only assigned error is on the overruling of appellant's motion for a new trial, which asserted that the verdict of the jury is not sustained by sufficient evidence; that the verdict of the jury is contrary to law.

The first specification in the motion for a new trial presents no question to this court because the burden was upon appellant to establish the allegations of his complaint, and a decision against him cannot be attacked upon the ground that there is insufficient evidence to sustain it. *Pokraka et al.* v. *Lummus Company* (1952), 230 Ind. 523, 528, 529, 104 N. E. 2d 669, with cases cited.

Appellant may, however, properly assert that the decision of the trial court denied him the relief to which he was entitled under the evidence and hence was contrary to law. *Wilson, Administratrix* v. *Rollings et al.* (1938), 214 Ind. 155, 14 N. E. 2d 905.

To determine this question we will consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom. *Rowe* v. *Johnson et al.* (1945), 223 Ind. 289, 291, 60 N. E. 2d 529.

An examination of the record discloses the following evidence most favorable to the appellee:

That on or about the 7th day of October, 1951, the appellant registered at the appellee's hotel as a paying guest, where he remained for several days. During his

stay he did, on several occasions, check his 1951 Cadillac automobile with the doorman or bell hop for the purpose of storage of said automobile and on each occasion was given a claim check receivable at the Plaza Motor Inn, Inc. On the evening of October 8, 1951, between five to six o'clock, the appellant, after covering his territory as a salesman, returned to the hotel and at which time he gave his car to either the doorman or bell boy for the purpose of having it garaged for the evening. Shortly thereafter, not being satisfied with the dining service, appellant again called for his car and while waiting for it walked into the Hawaiian Room of said hotel to have a cocktail where he met a Eugene Watson. While in the company of Watson they sat at the bar for an hour or two and had several drinks. Watson testified that he thought he and the appellant should not go out in the automobile after the cocktail hour and before dinner "because we had been drinking." After dinner the appellant Smith and Watson stopped at the bar for an after dinner drink and then headed upstairs. Watson further testified that they were joined by another person who proved to be a bell boy dressed in civilian clothes, who accompanied them to his room where they had another drink, after which they separated, Watson going to the Artists Guild Club and the appellant and the bell man going to the appellant's room. Shortly before midnight Watson received a telephone call from the appellant inviting him to come to his room to have a drink as he had a party going on.

Witness John Delane testified that he was a bell man for the appellee on October 8, 1951, his hours being from eleven at night to seven in the morning; that he was supposed to relieve a Mr. Hiner and Mr. Meadows but when he came on duty the only one that was on duty was Hiner. Between 1:30 and two o'clock he

took an order of ice up to the appellant's room where he saw bell man Meadows, who was not in uniform and who later appeared to be in an intoxicated condition. Mr. Delane further testified that he told Mr. Meadows he should go to the locker room and sober up, but Meadows replied he was going to have someone take him home and that he asked Mr. Meadows where the keys to Mr. Smith's car were, which was in front of the hotel; that Delane saw the Cadillac parked in front of the hotel; that Mr. Meadows told Delane that he was going to sit in the car until the garageman came to take him home, but he told Meadows not to drive the car and in a few seconds he looked out and saw that the car was gone; that all of this occurred after 11:00 P.M., and that between 4:00 and 6:00 A.M. he heard of the crack-up.

The manager of the appellee hotel testified that in his conversation with Mr. Smith he was told that Smith had given his keys to Meadows, the bellman in his room where a party was being had and that Meadows was supposed to take the car to the garage, and that Meadows left his room around midnight with the keys to the Cadillac car, which testimony was substantially corroborated by the assistant manager.

There was evidence that the assistant manager interrogated appellant as to whether or not permission had been given the bellman to drive the car, to which he replied that he had and the following question was asked:

Q. Did he (meaning Smith) tell you where they were when he gave him permission?

A. He said that around midnight he had invited some people from the third floor up to his room on the eighth floor for a nightcap, and that Meadows tagged along with them.

From this testimony, it is apparent that the appellant gave the keys to his automobile to Meadows when Meadows was in civilian clothes and attending a party in appellant's hotel room as his guest. The inference follows reasonably that Meadows was acting as agent for the appellant if and when he was driving the appellant's automobile at the time of its damage and that no relationship of bailor-bailee was created by the appellant with this appellee.

Appellant lays much stress upon the case of *Kallish, etc.* v. *Meyer Hotel Co.* (1944), 182 Tenn. 29, 184 S. W. 2d 45, as requiring the reversal of the case at bar. We are of the opinion that there is a difference in the two cases. In the Kallish case the jury found for the plaintiff. In this case, the verdict of the jury was for the defendant hotel. Of course, had the jury in the case found in favor of the appellant, we would have a different situation; but the legal question before this court requires us to consider that evidence only which is most favorable to the appellee and all inferences which may reasonably be drawn therefrom.

Appellant also cites *Keenan Hotel Co.* v. *Funk* (1931), 93 Ind. App. 677, 177 N. E. 364. In that case the court found in favor of the plaintiff. On appeal the question was whether the judgment of the lower court was sustained by sufficient evidence, a different legal question from that posed herein. The law as announced in the Keenan Hotel case is applicable to a proven bailment, but the evidence in this case does not require the finding that the bailment relationship had been created.

In 6 Am. Jur., p. 22, §65, it is stated:

"In order to constitute a sufficient delivery in any given case, the general rule is that there must be such a thorough transfer of property to the

bailee as to exceed the possession of the owner and all other persons and to give the bailee, for the time being, sole custody and control thereof . . ."

It appears to us that the evidence shows that there was no *full transfer of property* to the appelllee as bailee and further shows that the appellee did not, after Meadows joined the party of the appellant, drank with him, won his confidence to the extent that appellant gave him the keys to his automobile, have "sole custody and control" of the appellant's automobile.

Appellee contends that appellant's own negligence contributed to whatever damage he sustained, and the jury was entitled to so believe when returning its verdict for them.

Appellant maintains that the "innkeeper is practically an insurer of the safety of property entrusted to his care by a guest, and in the event of loss or injury, he may exonerate himself by showing an act of God, or the public enemy, or contributory negligence of the guest himself or some other person for whose acts the guest is responsible." The appellant himself recognizes, therefore, that if the damage to his automobile was caused by his contributory negligence, or the negligence of some other person for whose acts he, Smith, is responsible, he cannot recover in this action.

The law of Indiana coincides with the statement quoted above from American Jurisprudence and is stated in the case of *Laird* v. *Eichold and Another* (1858), 10 Ind. 212 at 213, in the following language:

"The authorities all agree that an innkeeper is prima facie liable for any loss or injury to the goods of his guests, not occasioned by the act of Providence, the public enemies, or the fault of the guest; . . ."

From the above statement of the law, it appears that even in the case of strict liability imposed upon an innkeeper for damage to the property of a guest, the negligence of the guest himself, which contributes to damage to his property, will defeat an action by him for damages. The contributory negligence of the guest himself would likewise defeat his recovery in the case of a bailor-bailee relationship between him and the defendant hotel.

A careful examination of all the evidence fails to disclose any evidence, or inferences which might be drawn therefrom, pertaining to any negligence of appellee which might have caused damage to the property of the appellant, which would force us to a conclusion other than that reached by the trial court. It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law. *Theo. Losche & Sons, Inc.* v. *Chas. Williams & Associates, Limited* (1948), 118 Ind. App. 392, 78 N. E. 2d 447.

We cannot say, from an examination of the record, that appellant was denied the relief to which he was entitled under the evidence. The decision of the trial court was, therefore, not contrary to law.

Finding no reversible error, the judgment of the trial court is affirmed.

NOTE.—Reported in 133 N. E. 2d 89.