Haskell GAHIMER, Helen C. Spradling, Administratrix of the Estate of Birney D. Spradling, Deceased, Plaintiffs-Appellants,

v.

VIRGINIA-CAROLINA CHEMICAL CORPORATION, Defendant-Appellee.

No. 11856.

United States Court of Appeals Seventh Circuit.

Feb. 18, 1957.

Rehearing Denied March 29, 1957.

**838**

Lawrence H. Hinds, Indianapolis, Ind., Clair McTurnan, Indianapolis, Ind., for appellants.

Harold H. Bredell, Indianapolis, Ind., Bredell, Cooper & Martin, Indianapolis, Ind., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff Haskell Gahimer operated a farm owned by Birney D. Spradling in Rush County, Indiana. Defendant, Virginia-Carolina Chemical Corporation, was engaged in the manufacture of fertilizer, with numerous plants, one of which was located at Cincinnati, Ohio. Lowell Innis, d/b/a Innis Farm Supply Company, operated a farm supply business at Milroy, Indiana, about three miles from the Spradling farm and, among other things, handled and sold fertilizer manufactured by defendant. On May 25, 1954, Gahimer and Spradling commenced an action in the Superior Court of Marion County, Indiana, for the recovery of damages to plaintiffs' corn occasioned by use of the alleged defective fertilizer manufactured by defendant and sold to Gahimer by Innis. During the course of the proceeding Birney D. Spradling died and Helen C. Spradling, Administratrix of his estate, was substituted as a party-plaintiff.

The complaint contained five counts, the first of which charged negligence by defendant in the manufacture of fertilizer, the use of which resulted in injury to plaintiffs' corn. The other four counts alleged breaches of implied warranty of fitness of fertilizer and of contract, and consequent damages to plaintiffs as a result of purchase and use of the fertilizer. At the conclusion of plaintiffs' testimony, the court, on motion of defendant, directed a verdict in its favor as to count 1. A similar motion was denied as to counts 2, 3, 4 and 5, and on those counts the jury returned a verdict in favor of defendant. Judgment was entered accordingly, from which plaintiffs appeal.

Two primary issues are urged as grounds for reversal, (1) that the court erred as a matter of law in directing a verdict in favor of defendant on the first count, and (2) that the verdict on counts 2, 3, 4 and 5 was erroneous for the reason that plaintiffs under the undisputed evidence were entitled as a matter of law to a verdict in their favor. Other issues are raised which may or may not become important, depending in part upon our disposition of the two primary issues. Such issues are: (a) the court erred in its rejection of certain testimony offered by plaintiffs on the issue of damages; (b) the court erred in the admission of evidence offered by defendant even though subsequently stricken with instructions to the jury to disregard it, and (c) the court erred in the giving of certain instructions relating both to the issues of liability and damages.

■ We shall first consider the action of the court in directing a verdict as to count 1. Defendant, in support of the court's action as to this count, contends (1) that the cause of action stated therein was barred by the applicable limitation provision of the Indiana Statute, and (2) that there was no liability by defendant for negligence because there was no privity of contract between defendant and plaintiffs. This latter contention rests on the premise that the fertilizer was purchased by plaintiffs from Innis, an independent contractor, and that there were no dealings between plaintiffs and defendant.

Although the record is not too certain, it appears that the court directed a verdict on the ground that the cause of action was barred by the statute of limitation. We shall, therefore, first consider this issue. The Indiana statute provides that an action "for injuries to personal property" shall be commenced within two years from the time "the cause of action has accrued." Indiana Acts 1951, Ch. 301, Sec. 2, subd. 1, p. 999.

A statement of the undisputed facts material to the limitation issue follows.

The action was commenced by the filing of a complaint May 25, 1954. The fertilizer was delivered to the Spradling farm by Innis on or about April 5, 1952. There it was stored until used by Gahimer in connection with the planting of three fields of corn of 20 acres each, referred to as fields 1, 2 and 3. Field 1 was planted May 15, field 2, May 20, and field 3, May 24, all in 1952. Gahimer observed, prior to May 25, that the corn in field 1 was coming up, but not "naturally and normally." The corn in fields 2 and 3 did not come up until after May 25. There is no proof that Gahimer had knowledge or any reason to think that the corn in any of the fields had been damaged by use of defendant's fertilizer until several weeks subsequent to May 25. When the damage was discovered by Gahimer, it was continuing and progressive in its nature.

Defendant's theory, evidently embraced by the trial court, is that the two-year limitation period commenced to run April 5, 1952, at the time the fertilizer was delivered to the farm. If this theory is sound, it is obvious that the cause of action filed May 25, 1954 was barred. On the other hand, plaintiffs' theory is that the limitation period commenced to run only when a cause of action accrued, which was not prior to the discovery of the injurious effect resulting from use of the fertilizer.

Both sides cite Indiana cases in support of their respective theories. Defendant relies upon Fidelity & Casualty Company of New York v. Jasper Furniture Company, 186 Ind. 566, 117 N.E. 258; Craven v. Craven, 181 Ind. 553, 103 N.E. 333, 105 N.E. 41; Montgomery v. Crum, 199 Ind. 660, 161 N.E. 251, and a decision of this court, Rowe v. Gatke Corp., 126 F.2d 61. In Fidelity, a suit upon contract, the court stated, 186 Ind. at page 567, 117 N.E. at page 258:

"* * * that a failure to discover a cause of action does not, like its concealment, operate to suspend the statute of limitation. [Citing cases.] A cause of action accrues, so that limitations begin to run, at the moment its owner has a legal right to sue on it, except where extrinsic facts, postponing the operation of the statute, are interposed."

In Craven, where the defendant claimed title to real estate by adverse possession, the court stated, 181 Ind. at page 559, 103 N.E. at page 335:

"The bare fact that he had no knowledge of his rights to the land would not prevent the statute running."

In Crum (also cited and relied upon by plaintiffs), the action was for alienation of affections wherein the wrongful act continued over a period of years. The court pointed out, 199 Ind. at page 678, 161 N.E. at page 259, that the accrual of a cause of action "depends upon the uniting of at least two elements—injury and damages," and on the following page stated:

"The two-year statute of limitations will not begin to run as a shield against the consequences of wrongful acts until the wrongdoer thereby accomplishes an injury to the person of another, for which the law allows indemnity in the form of damages (that is to say, damages susceptible of ascertainment), for not until then would the cause of action accrue to invoke the statute. [Citing cases.]"

Rowe involved an action for damages on account of occupational disease, and this court held that the statute of limitations did not commence to run until the date of the last exposure. That decision has no relevancy to the instant situation because of our reliance upon a special provision of the Indiana Statute which provided that an action "shall be commenced within two [2] years after the * * * last exposure to the hazards of the disease." Burns' Ann. St.Ind. § 40-2203.

Cases relied upon by plaintiffs on the limitation issue are Bockman v. Ritter, 21 Ind.App. 250, 52 N.E. 100; Montgo-

mery v. Crum, 199 Ind. 660, 161 N.E. 251 (as above noted, also relied upon by defendant), and Board of Commissioners of Wabash County v. Pearson, 120 Ind. 426, 22 N.E. 134. The Bockman case, like Crum, was an action for alienation of affections, which the court held to be a continuing wrong and that the limitation period commenced to run only when alienation was complete. The Pearson case was a suit for damages against the County for negligent construction of a bridge. The bridge was constructed in 1871, and plaintiff was injured in 1884. The defendant contended that the limitation period commenced to run at the time the bridge was constructed and that the suit was, therefore, barred. The court rejected this theory and in doing so stated, 120 Ind. at page 428, 22 N.E. at page 135:

> "The appellee's cause of action did not accrue until he was injured, and, although the defendant's negligence runs back to 1871, the action is not barred by the statute of limitations. The two elements of the appellee's cause of action are the legal injury and the resulting damages. City of North Vernon v. Voegler, 103 Ind. 314, 2 N.E. 821. The statute did not begin to run until the right of action accrued, and this did not accrue until the two elements came into existence. There is, therefore, no force in the argument that the acts of negligence were committed in 1871, and that the statute then commenced to run, notwithstanding the fact that the appellee was not injured until 1884."

As already noted, the two-year limitation period under the Indiana Statute commences to run from the time "the cause of action has accrued." The determinative question, therefore, is: when did plaintiffs' cause of action accrue? According to Fidelity, 186 Ind. 566, 117 N.E. 258, it accrued "at the moment its owner has a legal right to sue on it"; according to Crum, 199 Ind. 660, 161 N.E. 251, it accrued at the time "the wrongdoer thereby accomplishes an injury to the person of another, for which the law allows indemnity in the form of damages (that is to say, damages susceptible of ascertainment)," and according to Pearson, 120 Ind. 426, 22 N.E. 134, it consisted of two elements, that is, a legal injury and resulting damages, and did not accrue "until the two elements came into existence."

It is our conclusion that defendant's theory that the limitation period commenced to run from the time of the delivery of the fertilizer must be rejected. Assuming that plaintiffs sustained a legal injury at that time, no cause of action accrued until that injury resulted in damages. No cause of action could have been maintained until the fertilizer was utilized for the purpose for which it was purchased, with resultant damages. More than that, the damages must have been such as were "susceptible of ascertainment." This date can not and need not be determined with certainty. It is sufficient for our purpose that it was after the corn came up and was within the two-year limitation period.

■■ This brings us to defendant's second contention in support of the court's action in directing a verdict on the first count, that is, that in the absence of privity of contract there can be no liability for negligent manufacture. As already noted, the fertilizer was purchased from Innis, an independent dealer, who was authorized to sell it. This court, in Anderson v. Linton, 178 F.2d 304, considered and decided a similar issue contrary to defendant's position in the instant case. There, in the absence of a decision of the State in which the accident occurred (Iowa), we assumed that the Supreme Court of that State when called upon to decide the question would adopt the modern rule as expressed in Restatement of the Law of Torts, Sec. 395. We think our reasoning and result in that case were correct, but the case is of little aid here where we

are bound to follow the rule as announced by the courts of Indiana.

In Travis v. Rochester Bridge Co., 188 Ind. 79, at page 84, 122 N.E. 1, at page 2, the latest decision of which we are aware by the Supreme Court of Indiana on this issue, the court stated:

"It may be stated as a general rule that the manufacturer of products which, in their nature, are not inherently dangerous in use when free from defects, rests under no duty to exercise care in their manufacture for the safety of persons with whom he has no privity of contract. [Citing cases.] If, however, such a manufactured product at the time it is sold by the manufacturer is dangerous and unsafe for use for the purpose for which it is intended, and if the manufacturer knows of such defects at the time of sale, the duty rests on him to notify the purchaser of such defects. For a failure to discharge this duty the manufacturer is held liable to any person who may be injured as a result of such defect. [Citing cases.]"

Prior to the Travis case, the Indiana Appellate Court in Laudeman v. Russell & Co., 46 Ind.App. 32, at page 38, 91 N.E. 822, at page 824, discussing the same issue stated:

"The rule is well established that where the injury is the result of an act, the cause of which is not in itself imminently dangerous to life and limb, nor based upon fraud or deceit, nor implied invitation, and where the plaintiff is not a privy of the contract with the defendant, an action for negligence will not lie. In all cases like the one at bar, where the manufacturer and vendor owed no duty to the third party, who was a stranger to the contract, there could be no recovery. [Citing cases.]"

Plaintiffs rely upon two cases in support of an opposing view, Peru Heat-ing Company v. Lenhart, 48 Ind.App. 319, 95 N.E. 680, and Holland Furnace Company v. Nauracaj, 105 Ind.App. 574, 14 N.E.2d 339. Neither of these cases involves negligence by manufacture. In Peru, defendants were charged with negligence in the maintenance of plumbing which resulted in an overflow of water, thereby damaging plaintiffs' merchandise. The case was decided long prior to the decision of the Supreme Court in Travis, from which we have previously quoted. Holland was sued for negligence in the installation of a furnace on plaintiff's property, which caused a fire with resultant damages. The court held that even though there was no privity of contract plaintiff was entitled to recover. This case was decided subsequent to both Peru and Laudeman, which were cited and distinguished as evidenced by the following statement in the opinion, 105 Ind.App. at page 580, 14 N.E.2d at page 342:

"If the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor if he knew of the defect and fraudulently concealed it."

Even though we assume that which we think is not a fact, that is, that defendant's fertilizer when free from defect was dangerous and unsafe for use for the purpose for which it was intended, there is not the slightest basis for holding that defendant had knowledge of any defect concerning which it was under obligation to notify plaintiffs. In view of the decisions in Travis, 188 Ind. 79, 122 N.E. 1, and Laudeman, 46 Ind. App. 32, 91 N.E. 822, and particularly the former, we must conclude that plaintiffs, under the rule in Indiana, could not maintain their action under count 1 because of a lack of privity. It follows that the action of the court in directing a verdict on that count must be sustained.

■ This brings us to a consideration of the attack upon the jury verdict favorable to defendant on counts 2, 3, 4 and 5, all of which alleged in effect that plaintiffs in purchasing fertilizer manufactured by defendant relied upon an implied warranty of its fitness for the purpose for which it was purchased, and alleged further that there was a breach of such warranty in that the fertilizer contained noxious, foreign, deleterious and dangerous elements which caused injury to plaintiffs' corn, with the resultant damages. The limitation and privity issues discussed in connection with count 1 are not material as to these counts. This is so for the reason, apparently conceded by defendant, that both issues in an action for breach of warranty are determined by the Indiana Statute. The limitation period does not commence to run until six years after the cause of action has accrued. Ind. 1951 Acts, Sec. 1, p. 999. The Statute also defines "buyer" as including a buyer of a buyer for the purposes of the statutory implied warranty. Ind.Acts 1929, c. 192, Sec. 76, p. 628. Under this definition, it is, therefore, immaterial whether plaintiffs purchased the fertilizer from defendant or from Innis, the local dealer.

Plaintiffs' sole contention on this phase of the case as it relates to the issue of liability is stated in their brief as follows:

"The verdict of the jury on paragraphs II through V of the complaint was contrary to law in that the law applicable to the nonconflicting and substantial evidence of plaintiff's right of recovery required verdict for the plaintiff."

We see no point in relating the testimony relied upon as supporting the positions of the opposing parties. There was testimony that the damage to plaintiffs' corn was caused by the defective fertilizer. On the other hand, there was testimony that the damage was caused by its improper use, that is, by the manner of its application. Furthermore, there was testimony that the damage might have resulted from numerous causes other than defective fertilizer. We have carefully read the testimony and have no hesitancy in concluding that a typical jury question was presented on the issue of liability. Plaintiffs' argument on this point is rather confusing. In their reply brief it is stated:

"Plaintiffs do not present a technical assignment of the 'insufficiency of the evidence to sustain the verdict.' In Indiana the 'insufficiency' specification is not applied to negative verdicts. The same result, however, is accomplished by 'verdict contrary to law.'"

Plaintiffs argue that the courts refer to this issue as one of "miscarriage of justice," citing Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 377, 122 A.L.R. 987, and McGurty v. Transcontinental & Western Air, Inc., 7 Cir., 167 F.2d 406, 410. This court, however, in the latter case stated the universal rule applicable to reviewing courts at page 410:

"A court is not free to reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the appellate court might regard another result as more reasonable."

In our view, it makes no difference whether a jury verdict be characterized as without substantial support in the evidence or as contrary to law or as a miscarriage of justice. A verdict substantially supported by the evidence, rendered in a trial free from prejudicial error, is in conformity with law and justice.

■ Neither do we think there is any merit in the apparent suggestion that the Indiana rule is different from the Federal rule as it relates to negative verdicts. In Pokraka v. Lummus Co., 230 Ind. 523, 529, 104 N.E.2d 669, 671, the

court cited many Indiana cases in support of the following statement:

"Appellants may, however, properly assert that the decision of the trial court denied them the relief to which they were entitled under the evidence and hence was contrary to law. Wilson, Admx. v. Rollings, 1938, 214 Ind. 155, 14 N.E.2d 905, supra.

"To determine this question we will consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom. Rowe v. Johnson, 1945, 223 Ind. 289, 291, 60 N.E.2d 529, supra."

The Pokraka case was recently cited by the Indiana Appellate Court in Smith v. Hotel Antlers Co., Inc., 133 N.E.2d 89, 91, decided April 3, 1956, wherein the court, referring to a motion for new trial because of insufficient evidence to sustain a jury verdict, stated that it

"presents no question to this court because the burden was upon appellant to establish the allegations of his complaint, and a decision against him cannot be attacked upon the ground that there is insufficient evidence to sustain it."

■ It is not for this court to decide whether we, if the trier of the facts, would reach the same or a different result from that reached by the jury upon the factual issue of liability. Our inquiry extends no further than to determine if the evidence was such as to present a jury issue. We are convinced that it was, and that the case was properly submitted. Such being the situation, a judgment predicated upon the jury verdict, in the absence of prejudicial error, must stand.

■ Plaintiffs contend that the court erroneously rejected testimony offered by them on the issue of damages and that it erroneously admitted evidence offered by defendant showing the results of production by other farmers who used defendant's fertilizer, even though this latter evidence was subsequently stricken. Plaintiffs appear to reason that their rejected testimony and that offered by defendant fall into the same category and that the ruling as to both should have been the same.

In their summary of argument, plaintiffs state:

"Evidence of production in other years on the same or similar land and similar conditions is material evidence to prove damages for loss to growing crops and the rejection of such evidence from the plaintiffs is a material privation and contrasted with admission of defense evidence of favorable production on distant lands without showing similarity of soil or weather reflects the harm of the material rejection."

Plaintiffs in their contested issues state:

"The rejected evidence—offered by the plaintiff to show productive capacity for corn, of the same farm and the same fields in recently previous or subsequent years under such similarity of condition, soil and culture as to have probative force to show loss and extent of damages by alleged breaches under paragraphs II through V—was admissible."

And that:

"Evidence, admitted through farmer witnesses of the defendant, to show results of production with use of defendant's fertilizer was inadmissible, in the absence of foundation evidence to show similarity of soil, condition, weather and otherwise essential to give probative force to the evidence and was harmfully admitted irrespective of the fact that it was subsequently stricken with instructions to disregard it."

It would unduly prolong this opinion, and in the view which we take of the matter, serve no good purpose to state in any detail plaintiffs' rejected testimony. It relates in the main to an offer to prove by Gahimer the average yield of corn

produced on the Spradling farm during the years of his tenancy, that is, the years 1951 to 1955, inclusive. A so-called foundation was laid as a basis for the admission of this testimony by showing the land was farmed during the various years in a similar manner and under similar conditions. The testimony was offered to show the superior yield of corn for the years 1951, 1953, 1954 and 1955, in contrast to the yield in 1952, the year involved in this suit, as bearing upon plaintiffs' theory as to their measure of damages.

The jury by its verdict found no liability on the part of defendant. It is not discernible how the jury in the performance of its function could have been affected in any manner by the rejection of testimony relating to the issue of damages. Its verdict of non-liability is evidence of the fact that it did not reach that issue. The court instructed the jury as to the numerous elements and factors which it might take into consideration on the issue of liability. Following such instruction, the court charged:

"If you find for the plaintiffs, under the rules given you, then the next inquiry will be as to the measure of damages which the plaintiffs have sustained."

Then follows a series of instructions relative to the measure of damages, all based on the premise that the issue of liability had previously been determined in favor of plaintiffs. If the jury had found in favor of plaintiffs on the issue of liability, the rejection of the testimony under discussion would merit consideration. Under the circumstances, however, even though we assume that which we do not decide, that is, that plaintiffs' testimony was improperly rejected, it is our judgment that such rejection must be characterized as harmless or as error cured by verdict. See 5 C.J.S. Appeal and Error, § 1745, p. 1053; Cunningham v. Springer, 204 U.S. 647, 654, 27 S.Ct. 301, 51 L.Ed. 662; McCann v. New York Stock Exchange, 2 Cir., 107 F.2d 908, 913; Geschwindner v. Comer, 222 Ill.App. 417, 420.

The evidence offered by defendant, of which plaintiffs complain, and which was subsequently stricken by the court, consisted of the testimony of three farmers who had purchased from defendant during March and April, 1952, quantities of "VC Phospho Tobacco 3–18–9," being of the same analysis as that used by plaintiffs. The witnesses testified that they used the fertilizer with beneficial results, two with corn and one with beans. This line of testimony was objected to by plaintiffs on the ground that there was no showing that the fertilizer purchased was from the same batch as that purchased by plaintiffs; that there was no showing that the witnesses used the same kind of planter as that used by plaintiffs, or that the conditions of the soil and weather were the same. The court overruled the objection upon defendant's promise that it would make the connection, that is, show that the fertilizer purchased by the witnesses came from the same batch as that purchased by plaintiffs. At the conclusion of their testimony, the court ruled that the promised connection had not been made, struck the testimony from the record and specifically instructed the jury that it was not to be considered.

■ Defendant argues, with some plausibility, that the promised connection was made and that the court erred in its ruling to the contrary and hence erred in striking the testimony. Any error in respect to the court's ruling on this point was against defendant and need not be resolved. Plaintiffs, however, contend that permitting the jury to hear this testimony was prejudicial error. We do not agree. Most important is the fact, as noted, that the jury was specifically instructed to disregard it, which it is presumed to have done. Furthermore, if the fertilizer purchased by the witnesses, from which they obtained favorable results, and that purchased by plaintiffs, from which they obtained unfavorable results, all came from the same batch—in other words, all contained the

same elements—it would constitute some proof that plaintiffs' unfavorable result was due to a cause other than defective fertilizer. This would be so irrespective of whether the fertilizer was all used on the same character of soil, with similar climatic conditions. On the other hand, if the fertilizer purchased by the witnesses was from a different batch—was a different kind of fertilizer, as plaintiffs contend—admission of such evidence, if it had any effect, would appear to have been favorable rather than prejudicial to plaintiffs. Testimony of other farmers that they obtained a beneficial result from the use of proper fertilizer could have furnished some indication that defective fertilizer was the cause of plaintiffs' alleged damage.

Plaintiffs contend that the court committed numerous errors in the giving of its instructions. It is argued that the court erred in referring to count 1 of the complaint which alleged negligence in manufacture and on which a motion for directed verdict had previously been allowed. This argument is without merit inasmuch as the court stated to the jury:

"* * * you will not concern yourselves further in your deliberation as to these matters [referring to the first count]. You will concern yourselves in deliberations upon the issues of the second, third, fourth and fifth paragraphs of plaintiffs' second amended complaint and the defendant's several defenses addressed thereto."

■ Plaintiffs in their brief state: "Instruction 13, given by the Court of its own motion and quoting the section of the statute relative to the *conclusive* effect of an official certificate as evidence, when by subsequent repealing statute the official certificate was made *prima facie* evidence of the truth of its content, was erroneous."

This instruction was based upon a provision of the Indiana Statute, Ind.1881 Acts, Spec.Sess., ch. 51, sec. 4, which governs the licensing of manufacture of commercial fertilizer. It is argued that violation of the fertilizer Act by defendant was not in issue or in evidence. The principal attack on this instruction, however, arises from the fact that the Indiana Statute referred to in the instruction was repealed effective July 1, 1953, and the repealing Act provided that "the official analysis signed by the state chemist shall be accepted as *prima facie* evidence of the composition." Ind.1953 Acts, ch. 30, sec. 15, p. 98. It should be observed that the original Act was in effect at the time the fertilizer was manufactured, sold and delivered to plaintiffs, at the time of its use and during the crop season of 1952, the year involved in the suit. True, it had been repealed and the repealing Act was in effect at the time of the trial. No case is cited in support of plaintiffs' contention that the law in effect at the time of the trial is controlling, rather than that which existed at the time of the accrual of the alleged cause of action. In our view, the contention is not sound. More than that, plaintiffs made no objection to the giving of the instruction because the statutory provision on which it was based had been repealed. There may be room for argument that the instruction as given was not material to any issue in the case; however, it should be noted that it was the plaintiffs who introduced in evidence the tag accompanying the fertilizer which contained the manufacturer's guarantee and which included a copy of the certificate signed by the state chemist. In any event, we see no reason to characterize the instruction as prejudicial error.

■ The last complaint of which we shall take notice, and perhaps the most important, is that the court in the concluding sentence of a lengthy instruction stated:

"If, for example, you should find that there is no preponderance of proof that the damage was caused by defective fertilizer any more than from soil condition, weather and climate conditions, the extent of rainfall, or method of planting and

fertilizing, the plaintiffs will have failed to prove that any alleged damage was the liability of the defendant, and in such event your verdict should be for the defendant."

Plaintiffs object to this sentence on the grounds that it "would eliminate any cause or damage if there was any other element that might sharpen the loss or increase it, and would operate more or less as a contributory negligence exclusion not applicable to a contract clause." We agree that the wording of this sentence is subject to criticism but we do not believe that it is reasonably susceptible of the interpretation asserted by plaintiffs. Particularly is that so when the sentence is read, as it must be, in connection with the preceding portions of the instruction to which no objection was made. The instruction had previously pointed out to the jury that in order for plaintiffs to recover they must establish "by a preponderance of the evidence" that their alleged damage "resulted directly and proximately" from some breach of warranty of defendant; that the mere fact that plaintiffs sustained damage was not enough to charge defendant with liability, and if they had failed to prove that the "direct and proximate" cause was a defect in the fertilizer manufactured by defendant, "you are not entitled to speculate upon the causes of such damage." Moreover, other instructions clearly and accurately informed the jury of the facts which must be found as a prerequisite to the right of plaintiffs to recover damages, and conversely, the facts which, if found, would preclude such recovery. When the instructions are thus considered in their entirety, we think the issues which the jury was called upon to consider were clearly set forth and that there is no reasonable basis for the contention that the jury was misled or prejudiced by the form of submission.

Other minor questions are discussed, which we have considered and find without merit. The judgment is

Affirmed.