ESSEX WIRE CORPORATION,
Plaintiff-Appellee,

v.

M. H. HILT COMPANY, Inc., Defendant-
Appellant.

No. 12436.

United States Court of Appeals
Seventh Circuit.

Feb. 17, 1959.

Leigh L. Hunt, William L. Wilks, Fort Wayne, Ind., for defendant-appellant, Hunt & Suedhoff, Fort Wayne, Ind., of counsel.

Thomas A. Gallmeyer, Thomas D. Logan, Rothberg, Gallmeyer, Doermer & Strutz, Fort Wayne, Ind., for plaintiff-appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

HASTINGS, Circuit Judge.

This diversity action was brought by Essex Wire Corporation, plaintiff-appellee, against M. H. Hilt Company, Inc., defendant-appellant, to recover damages alleged to have been caused by defendant, while engaged in performing its contract to insulate pipes in plaintiff's plant in Marion, Indiana, by negligently permitting cloth insulating material to enter an electric motor located in plaintiff's boiler room. The case was tried to the court without a jury resulting in findings of fact and conclusions of law favorable to plaintiff with judgment thereon for plaintiff in the sum of $7,-750.58. Defendant's motion for a new trial was denied and this appeal followed. The errors relied upon arise out of certain rulings of the trial court on the evidence and the correctness of the findings and conclusions.

Defendant's employees were engaged at work in plaintiff's plant from about the middle of March, 1953, to the last of December, 1953. On October 22, 1953, at least three of defendant's employees were working in the boiler room. A light material, known as "covering canvas", was being fitted by them over the pipes to be insulated. In this process scrap material, shavings or small pieces of canvas accumulated and were permitted to fall to the floor or upon the scaffolds erected in the boiler room.

In this room, about 30 by 40 feet in size, was housed a high pressure boiler which operated under a forced draft produced by a fan propelled by the motor in question. The fan was mounted on one end of the motor shaft; and, at the other end of the motor, known as the bell-end, there was an air intake in the form of an elliptical-shaped opening about six inches long and three inches wide located about three feet above the floor. There was no guard over this opening. Without the fan in operation the boiler would gradually lose its steam with resulting loss of pressure. Without sufficient steam pressure plaintiff's factory could not operate its vulcanizing processes necessary for certain production and would have no heat.

On October 22, 1953, a piece of scrap canvas was somehow drawn into the electric motor through the air intake causing the motor to make a grinding fluttering noise and to smoke. Fuller, plaintiff's employee, the boiler operator, heard the motor choking down and realizing something was in the motor, went to the motor and saw the end of a piece of canvas material sticking in the air intake in the bell-end of the motor. Fuller immediately turned off the motor and it was shut down for about five minutes. While the motor was stopped someone, probably one of defendant's employees, pulled the piece of canvas out of the opening, and the motor was then started again by either Fuller or Eymer, an employee of the installer of the boiler room equipment, who was present for the purpose of instructing Fuller in the operation of the equipment. Later that day one of defendant's employees placed a guard over the air intake. The motor ran without stopping or giving further trouble until February 10, 1955, a period of over fifteen months.

On February 10, 1955, the motor failed, whereupon plaintiff removed the bell-end of the motor and found a crumpled piece of canvas wound around the cooling fan blades at the bell-end of the motor where the air intake opening was located. This piece of canvas apparently had, by the operation of the motor, gradually accumulated dust and abraded the insulation causing the motor to burn out.

Arrangements were made that evening to start a standby boiler and the next day to have the damaged motor repaired. Although the burned out motor was at a repair shop for several days, the standby boiler was in operation after about eighteen hours.

The initial complaint for damages was filed in the district court on January 29, 1957, followed by an amended complaint on February 26, 1957. The amended complaint charges that "the burning out

of said motor, and the stopping of said motor, and the damages flowing therefrom \* \* \*, were solely and proximately caused by the presence of those certain pieces of scrap material then and there found [on February 10, 1955] to be present in the interior of said machine, said scrap material being that scrap material negligently and carelessly dropped by the authorized agents of the defendant, on or about the 22nd day of October, 1953 \* \* \*." The amended complaint goes on to allege that as a direct and proximate result of such negligence (set out in detail in the complaint) plaintiff was damaged (1) in the sum of $214.16 for damage to the motor, (2) in the sum of $336.42 for direct expenditures, and (3) in the sum of $15,117.41 for loss of profit resulting from loss of production while the factory was down, praying for total recovery of $15,667.99. Defendant filed its answer in three paragraphs, the first being a general denial of liability, the second alleging the defense of contributory negligence, and the third pleading the bar of the two-year statute of limitations.

The critical question in the appeal concerns the Indiana statute of limitations, Burns' Ind.Ann.Stat. § 2-602 (1946 Repl.) which reads in pertinent part as follows:

"The following actions shall be commenced within the periods herein prescribed *after the cause of action has accrued,* and not afterwards:

"First. For injuries \* \* \* to personal property, \* \* \* within two [2] years \* \* \*." (Our emphasis.)

The negligence complained of occurred on October 22, 1953, the final stoppage of the motor and resulting loss of production on February 10, 1955; and the action was commenced in the district court on January 29, 1957. If the cause of action accrued on October 22, 1953, as defendant contends, it is barred by the foregoing statute. If it did not accrue until Februay 10, 1955 as urged by plaintiff, then the action was timely filed.

It is undisputed that this question is to be determined by the law of Indiana.

Among the findings of fact are the following:

"5. On or about October 22, 1953, defendant's employees were finishing their work in the plaintiff's said boiler room. The workmen were applying a light cloth, known as 'covering canvas', to the pipe specified in the contract hereinbefore mentioned.

"6. A portion of this cloth was allowed to be sucked into a 30-Horsepower-36 R.P.M. motor which was located in said boiler room, through the negligence of the employees of the defendant on said date.

"7. Defendant's employees took no precautionary measures to prevent the cloth from becoming entangled in said motor which was a result that could readily have been foreseen and anticipated by the defendant.

"8. As the result of this occurrence, on or about February 10, 1955, at about 10 o'clock P.M. said 30-Horsepower-36 R.P.M. motor burned out, causing the boiler to lose steam and heat and necessitating the plant to suspend operation for a period of eighteen (18) hours.

"9. Plaintiff did not know, nor could not, with the exercise of reasonable care, have known of the existence of said 'canvas covering' cloth in the 30-Horsepower motor, as plaintiff used all due care in inspecting said motor.

"10. Defendants had control over the work being done in the boiler room.

"11. The authorized agents of the defendant were acting within the course and scope of their employment in furtherance of their employer's business at the time the cloth was allowed to be entangled in the motor heretofore described and which was located in the boiler room."

■ Our court has recently passed upon this issue of limitation affecting injuries to personal property, and, in so doing, construed the particular section of the Indiana statute before us in Gahimer v. Virginia-Carolina Chemical Corporation, 7 Cir., 1957, 241 F.2d 836, 838–840. In this opinion Judge Major gave careful consideration to many Indiana cases, some of which are cited by the parties here, and concluded that under this statute a cause of action accrued at the time one has suffered (1) a legal injury and (2) resulting damages susceptible of ascertainment. These two elements must both come into existence before the limitation period commences to run. See Montgomery v. Crum, 1928, 199 Ind. 660, 161 N.E. 251; Board of Commissioners of Wabash County v. Pearson, 1889, 120 Ind. 426, 22 N.E. 134; City of North Vernon v. Voegler, 1885, 103 Ind. 314, 2 N.E. 821; Bockman v. Ritter, 1898, 21 Ind.App. 250, 52 N.E. 100.

Defendant seeks to distinguish Gahimer from the case at bar on its facts. The facts in all the cases cited are different in some respects, but the rule of law announced in Gahimer is sound and is applicable to the instant situation.

Defendant urges that there were elements of damage "susceptible of ascertainment" on the date the alleged negligent act occurred, October 22, 1953, as follows: "1. Damage to motor," [However, at that time, no damage to the motor was shown after the piece of canvas was removed as evidenced by the continuous satisfactory operation of the motor for over fifteen months thereafter.] "2. Cost of dismantling the motor to ascertain its damage and cost of repairs," [But the motor was not dismantled at that time, and the trial court found in Finding of Fact No. 9, as set out above, that plaintiff did not or could not have known, in the exercise of reasonable care, that any of the cloth remained in the motor and that plaintiff used all due care in inspecting the motor.] and "3. Loss of use of vital plant facilities during the time the motor was shut down on October 22, 1953," [But there was no such loss of use during this interval of five minutes.] "and during the time it *should have been shut down for proper inspection*, including removing the endbell (*sic*), and *repairs if any were necessary*." (Our emphasis.) [Again, see Finding of Fact No. 9., above.] It is clear to us that damage did not result until the motor finally stopped on February 10, 1955.

Defendant cites Indiana cases construing the fraud or concealment statute, Burns' Ind.Ann.Stat. § 2–609 (1946 Repl.). We find no issue of fraud or concealment here. Defendant's reliance on Guy v. Schuldt, 1956, 236 Ind. 101, 138 N.E.2d 891, is similarly misplaced. That case involved a suit for malpractice and the applicable malpractice limitation statute, Burns' Ind.Ann.Stat. § 2–627 (1946 Repl.), specifically provides that such a cause of action must be commenced "within two (2) years *from the date of the act, omission or neglect complained of*." (Our emphasis.) The statute under consideration in the instant case contains no such language.

We have no dispute with defendant's position that an injured party has a duty to minimize his damage and may not properly claim an extension of the limitation period until the extent of his damages are *fully* ascertained.

■ We hold, therefore, that the statute of limitations did not begin to run until February 10, 1955, and that plaintiff's action was timely filed.

■ Defendant charges further it was not guilty of negligence that proximately contributed to cause any damage to plaintiff, and that plaintiff was guilty of contributory negligence. Our examination of the record satisfies us that the trial court's findings of fact favorable to plaintiff on these issues are not clearly erroneous and should not be set aside. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ Much is made of the fact that plaintiff made no attempt to obtain a replacement motor after the failure of the boiler room motor on February 10, 1955 and thus failed to minimize its

damages. Whether securing such a motor could have accomplished a more rapid recovery of steam power than plaintiff's prompt arrangement to start up an auxiliary boiler, which was in operation in eighteen hours, is strictly conjectural under the state of the record in this case. On the evidence presented, it could not be held that the verdict is excessive because of any failure of plaintiff to minimize damages. See Miller v. Long, 1956, 126 Ind.App. 482, 500–501, 131 N.E.2d 348, 356–357, 132 N.E.2d 272.

Defendant finally contends that the trial court erred in excluding certain evidence offered by defendant relative to proper maintenance and inspection of the motor in question by plaintiff. We have considered the record relating to this proposition and hold that, if any error was committed in not allowing the witness to answer the questions bearing on this issue, it was harmless and must be disregarded as not affecting the substantial rights of the parties. Rule 61, Federal Rules of Civil Procedure, 28 U.S. C.A.

We hold that the district court did not err in denying defendant's motion for a new trial and the judgment below is affirmed.