**Henrietta L. WITHERS, Plaintiff,**

v.

**STERLING DRUG, INC., Defendant.**

**No. IP 69–C–250.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

Nov. 25, 1970.

---

Hamill & Price, by Thomas J. Carroll, Indianapolis, Ind., for plaintiff.

Locke, Reynolds, Boyd & Weisell, by Hugh E. Reynolds, Jr., Indianapolis, Ind., for defendant.

## OPINION

HOLDER, District Judge.

This is a products liability action between citizens of diverse states. The evidence and pleadings before the Court disclose that the defendant manufactured and marketed a brand of chloroquine known as "Aralen". Plaintiff's physician prescribed "Aralen" for the treatment of a certain arthritic condition of the plaintiff, and plaintiff purchased and ingested "Aralen" between December 28, 1957 and September 23, 1963. Plaintiff purchased the drug "Aralen" from two different retail dispensaries in Indianapolis, Indiana, during that period. In June 1962, plaintiff first experienced eye trouble, but she did not investigate the cause of this trouble until September 1963 when she consulted a "specialist". The specialist advised plaintiff that her eye difficulty was caused by her use of the drug "Aralen" but that the condition was reversible and would correct itself.

Plaintiff reported the results of the specialist's examination to the prescribing physician who also advised her that the condition was reversible. Plaintiff believed that her eye condition was in fact reversible and would correct itself, and it was not until May 1, 1969 that the specialist informed plaintiff that her eyesight would never improve, that she had suffered permanent damage to her vision.

Plaintiff filed this cause of action in three counts on May 26, 1969. Bared of the usual formalities, the three counts are grounded upon theories of negligence, strict liability and breach of implied warranty, respectively. Plaintiff has declared to the Court that the third count, for breach of implied warranty, sounds in contract.

The defendant moved for summary judgment upon its second defense as to all three counts of the complaint, contending that the present action is barred by § 2–602 of Burns' Indiana Statutes Annotated (1967 repl.), which reads in pertinent part as follows:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

"First. For injuries to person or character, for injuries to personal property, * * * within two [2] years: * * *"

The plaintiff opposes the motion and files a cross motion for partial summary judgment on the issues joined by the complaint and defendant's second defense. The plaintiff first contends that her cause of action did not "accrue", within the meaning of § 2–602, until May 1, 1969 when she learned that her eye condition was irreversible, and that this action was clearly begun within the statutory two year period. To support her contention, plaintiff cites Gahimer v. Virginia-Carolina Chemical Corp., 241 F. 2d 836 (7 Cir. 1957); Essex Wire Corp. v. M. H. Hilt Company, 263 F.2d 599 (7 Cir. 1959); and numerous cases from other jurisdictions.

The *Gahimer* case involved an action to recover damages to a corn crop occasioned by the use of allegedly defective fertilizer manufactured by the Virginia-Carolina Chemical Corp. and sold to Gahimer by an independent agent. The fertilizer was delivered to the farm which Gahimer operated on April 5, 1952 and was stored there until it was used in connection with the planting of three fields of corn referred to as fields 1, 2 and 3. Field 1 was planted on May 15, field 2, May 20, and field 3, May 24, all in 1952. It was observed, prior to May 25, that the corn in field 1 was coming up, but not "naturally and normally". The corn in fields 2 and 3 did not come up until after May 25. The action was commenced by the filing of a complaint on May 25, 1954. Indiana law controlled, and on appeal, the Seventh Circuit Court of Appeals was called upon to construe § 2–602 as it applied to injuries to personal property, i. e. the corn crops. After concluding from the record that plaintiffs in *Gahimer* had no knowledge or reason to think that the corn in any of the fields had been damaged by the use of the fertilizer until several weeks subsequent to May 25, the Court held that:

"No cause of action could have been maintained until the fertilizer was utilized for the purpose for which it was purchased, with resultant damages. More than that, the damages must have been such as were 'susceptible of ascertainment.' This date can not and need not be determined with certainty. It is sufficient for our purpose that it was after the corn came up and was within the two-year limitation period." 241 F.2d 836, 840.

The above holding does not support plaintiff's contention that the present action did not accrue until May 1, 1969 when plaintiff learned that her vision impairment was permanent. Read in the context of the Indiana case law which the *Gahimer* Court reviewed, especially Board of Commissioners of Wabash County v. Pearson, 120 Ind. 426, 22 N.E. 134 (1889) and Montgomery v. Crum, 199 Ind. 660, 161 N.E. 251 (1928), *Gahimer*

merely held that that cause of action did not accrue upon the occurrence of the legal injury, i. e. delivery of the allegedly defective fertilizer to Gahimer, but when the legal injury coalesced with resulting damages, which coalescence occurred sometime after the crop in field 1 began to come up, and that that cause of action therefore accrued within two years of the date of the filing of the complaint.

■ In the present case, the allegations of the complaint show that the plaintiff was fully aware of the fact that the alleged wrongdoer, the defendant, accomplished an injury to the person of the plaintiff for which the law allowed indemnity in the form of damages in September 1963. Montgomery v. Crum, 199 Ind. 660, 679, 161 N.E. 251 (1928). And this Court holds that, having already been legally injured by defendant, plaintiff's cause of action accrued in September 1963 when plaintiff ascertained that she had suffered legal damages. Board of Commissioners of Wabash County v. Pearson, *supra*; Montgomery v. Crum, *supra*; and Gahimer v. Virginia-Carolina Chemical Corp., *supra*. If plaintiff had brought her action against the present defendant within two years after discovering the injury in September 1963 and had recovered for an injury thought to have been temporary, it is not to be supposed that plaintiff could now alter that judgment or bring a second law suit to recover a larger judgment because it has now been determined that the injury was permanent.[1] Likewise, plaintiff can not argue now that her cause of action did not accrue until May 1, 1969 when she discovered that the injury she first became aware of in September 1963 was more serious than she had originally supposed. To hold otherwise would be to split the cause of action, creating one action for temporary damages and one for permanent damages.

Neither Essex Wire Corp. v. M. H. Hilt Company, *supra*, nor the cases from other jurisdictions cited by the plaintiff, require a different result. In *Essex Wire*, another case involving § 2–602 of Burns' Indiana Statutes Annotated, the Court again held that a cause of action did not accrue when the legal injury, or negligence, occurred, but when it became ascertainable that the negligence had resulted in damage to the plaintiff some fifteen months after the negligent act. In view of the Indiana and Federal Court cases construing § 2–602, the case law of the other jurisdictions is unavailing to the plaintiff.

■ The plaintiff, relying upon an Indiana medical malpractice case, Guy v. Schuldt, 236 Ind. 101, 138 N.E.2d 891 (1956), also contends that defendant is estopped from asserting the statute of limitations in § 2–602 because of defendant's concealment of the cause of action. The plaintiff further contends that § 2–609 of Burns' Indiana Statutes Annotated (1967 repl.) is applicable to the present case. § 2–609 provides as follows:

> "*2–609. Concealment of cause of action.*—If any person liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitations, after the discovery of the cause of action."

The briefs and evidence submitted with respect to the above two contentions of the plaintiff concern certain correspondence among the defendant, the prescribing doctor, and the plaintiff's husband. The correspondence extends from January 7, 1964 through January 16, 1964. The Court holds that plaintiff's equitable estoppel and statutory concealment theories are without merit for the reason that the Court finds, and has so held above, that plaintiff's cause of action accrued in September 1963, prior to the alleged acts of fraud and concealment, and the relevant statute of limita-

---

[1] It is probable, however, that the true nature of damages would have been determined upon development of the damage issues at a trial commenced within the limitation period.

tions (§ 2–602) began to run at that time.

■ Finally, plaintiff contends that her third count for breach of implied warranty sounds in contract and is, therefore, not yet barred by the six year statute of limitations with respect to the commencement of actions in contract, Burns' Indiana Statutes Annotated (1967 repl.), § 2–601. Despite plaintiff's declaration to the contrary, however, this Court finds that the plaintiff has not pleaded, and the evidence does not disclose, an actionable cause of action for breach of implied warranty which sounds in contract for the reason that plaintiff was not in privity with the defendant.[2] In Indiana, an action for breach of warranty may be either in contract or in tort, depending upon the allegations of the complaint, Wright-Bachman, Inc. v. Hodnett, 235 Ind. 307, 133 N.E.2d 713 (1956). A suit for breach of implied warranty which sounds in contract is an action which arises out of the agreement of the parties, and only a party to the contract, one in privity with him, or one within the coverage of § 19–2–318 of Burns' Indiana Statutes Annotated (1964 repl.), may enforce the implied warranty. An action for tortious breach of implied warranty arises out of a duty fixed by the law and is independent of the will or agreement of the parties. 1 I.L.E., Action, § 25, p. 93.

In Dagley v. Armstrong Rubber Company, 344 F.2d 245 (7 Cir. 1965), the Court held that privity is not a requirement in Indiana in a suit for breach of implied warranty. However, in Dagley, the plaintiffs had declared to the trial court that their warranty counts were actions in tort, and while the language in Dagley is broad, the actual holding of the case must be limited to the facts of the case. This is particularly so in the case of Dagley since that Court, in the absence of recent case law in point, was necessarily attempting to forecast what the Indiana Courts would hold, given the facts as they existed in Dagley.

The Court in Dagley recognized that "the general rule in the United States is that privity of contract is indispensable in a suit for breach of implied warranty," but after examining the historical basis for the privity rule, noted that the rule was formulated at a time when public policy favored the protection of industry. 344 F.2d 245, 252. The Court then observed that, "As industry matured it outgrew this need for protection and today the policy of protection of industry is being replaced by a policy 'that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum protection at the hands of some one, and the proper persons to afford it are those who market the product,'" quoting from the comments to § 402A of the 1964 Tentative Draft No. 10 of Restatement of Torts 2d. Again citing the comments to § 402A, the Court concluded that "As a result of this new policy there has developed a new concept of warranty." 344 F.2d 245, 253. The Court further explained, however, that this new warranty concept, sounding in tort, did not supersede the familiar contract action for breach of implied warranty:

"* * *. The traditional concept of warranty is that the seller of a product expressly and impliedly warrants certain things concerning the product to the buyer. This warranty is a part of the contract between seller and buyer and thus has its basis in contract law. (As noted previously, however, most courts hold that warranty may also state a cause of action in tort.) This traditional concept is not being superseded by the new concept and

---

2. Even if plaintiff could establish privity, the applicability of the six year limitation period of § 2–601 to a cause of action in contract for consequential damages to the person is questionable. Cf. Vandevoir v. Southeastern Greyhound Lines, 152 F.2d 150 (7 Cir. 1945).

still requires privity of contract to be enforced.

"The new concept of warranty bases liability on strict liability in tort. This warranty 'is a very different kind of warranty from those usually found in the sale of goods, and * * * it is not subject to the various contract rules which have grown up to surround such sales.' [Restatement of Torts 2d, comments]" 344 F.2d 245 at 253

Subsequent to the *Dagley* decision, the Appellate Court of Indiana expressly adopted the "new" warranty concept as it is embodied in § 402A, Restatement of Torts, 2d (1964). See Cornette v. Searjeant Metal Products, Inc., 258 N.E.2d 652, 21 Ind.Dec. 355 (App.Ct., filed May 26, 1970) and Perfection Paint & Color Co. v. Konduris, 258 N.E.2d 681, 21 Ind. Dec. 475 (App.Ct., filed June 2, 1970).

The complaint in this products liability case contains separate counts alleging strict liability and breach of implied warranty. Tortious breach of implied warranty forms the theoretical basis for the strict liability rule adopted in Indiana and does not constitute a separate cause of action. The implied warranty count in the present cause, absent the element of contractual privity, must sound in tort and is, therefore, duplicitous of the strict liability count: It seeks the same remedy under a different label. See Cornette v. Searjeant Metal Products, *supra,* where the Appellate Court of Indiana, after quoting from *Dagley,* explained that:

"* * * 'Warranty' as used by Judge Hastings [in the *Dagley* decision] and in this opinion is intended in the broad sense of the word and is intended to identify by analogy the conceptual basis of liability. It should not be confused in this context with the express and implied contract warranties as they may relate to products

liability." 258 N.E.2d 652, at 655, 21 Ind.Dec. 355 at 360.

The recent opinion in Filler v. Rayex Corp., 435 F.2d 336 (7 Cir., filed Nov. 3, 1970), does not require a different result. It is not apparent from the opinion whether the plaintiff in *Filler* was proceeding on a breach of implied warranty theory which sounded in contract or in tort. It does appear, however, that the parties in *Filler* did not raise nor brief the precise issue involved here since the opinion does not treat that issue, and the *Filler* decision therefore, does not constitute proper authority for a ruling on the privity issue in the present case. But in any event, the *Filler* decision is distinguishable on the basis of Hart v. Goodyear Tire & Rubber Company, 214 F. Supp. 817 (N.D.Ind.1963). In *Hart,* the Court held that the personal representative of a decedent who was killed in the course and scope of his employment while driving his employer's truck could properly sue the manufacturer of an allegedly defective tire which had blown out, causing the truck to leave the road, overturn and fatally injure the decedent. The decedent's corporate employer had purchased the tire directly from the Goodyear Tire & Rubber Company and the Court in *Hart,* citing a 1960 California Supreme Court decision, noted that businesses are carried on by means of the assistance of employees and that equipment purchased by employers will in actual use be handled by the employees, who may be said to stand in the shoes of the employer. The *Hart* Court then held that the decedent, because of his employee relationship to the buyer was in privity with the defendant within the meaning of § 58–115 of Burns' Indiana Statutes Annotated (1961 repl.).[3] In the *Filler* case, the plaintiff lost his right eye when the "baseball sunglasses" he was wearing shattered as he was struck on the head by a fly ball which he had lost in the

---

3. § 58–115 contained the implied warranty provisions of the Uniform Sales Act in Indiana. The section was repealed effective as of July 1, 1964 when the Uniform Commercial Code was adopted in Indiana. Acts of Indiana, 1963. ch. 317, § 10–102, but the Hart doctrine of privity should have continuing vitality under the Uniform Commercial Code.

sun. The sunglasses had been purchased from the defendant in that case by the coach of the team for which plaintiff was playing at the time he was injured. Because of the relationship of the plaintiff in *Filler* to the purchaser of the defective sunglasses, he was in privity with the defendant, Rayex Corporation, within the meaning of Hart v. Goodyear Tire & Rubber Company, *supra*.

In the present case, plaintiff has failed to establish privity, and the Court, having examined the pleadings, deems the third count to be one for tortious breach of implied warranty, or under Indiana law, one for strict liability in tort. As such, it is repetitive of the second count, and like count two, is barred by the two year statute of limitations of § 2–602 for injuries to the person.

Defendant's motion for summary judgment upon its second defense is, therefore, granted and the plaintiff's cross motion for partial summary judgment is denied.

It is ordered and adjudged that judgment be entered for the defendant and against the plaintiff with respect to both motions, with costs to be assessed against the plaintiff.